Kevin H. Jang, A Law Corporation
Kevin H. Jang, Esq. (SB#276784)
3435 Wilshire Blvd. Suite #2300
Los Angeles, CA 90010
Telephone: (213) 221-1188
Facsimile: (213) 221-1184

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAMES SUNGCHULL KIM TRUSTEE OF THE JAMES SUNGCHULL KIM TRUST,** *Plaintiff,* | Case No.: **8:23-cv-00652-CJC-ADSx** <br> Judge: Hon. Cormac J. Carney <br><br> Magistrate Judge: Hon. Autumn D. Spaeth <br><br> **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR ORDER TO REMAND UNLAWFUL DETAINER TO STATE COURT** |
| **vs.** | |
| **JENNIFER PLUMMER, SUZANNA PARRA** <br> *Defendants,* | Defendants didn't stipulate or oppose. <br><br> Date Ex Parte Filed: April 27, 2023 <br><br> Hearing Date: No hearing date set for ex parte matters except by the Court <br><br> Hearing Time: Not Set <br><br> Complaint Filed: February 21, 2023 <br><br> Notice of Removal Date: April 14, 2023 |

# REQUEST FOR JUDICAL NOTICE

Plaintiff hereby requests judicial notice of the following exhibits:

A.    A true and correct copy of the residential lease agreement entered into by and between Plaintiff and Defendant is attached as Exhibit "A".

B.    A True copy of the complaint is attached hereto as Exhibit "B".

DATED: April 27, 2023                    Kevin H. Jang, A Law Corporation

                                   By:  /s/ Kevin H. Jang
                                        Kevin H. Jang, Esq.
                                        Attorney for Plaintiff

# EXHIBIT A

**UD-100**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| M. C. EARLE BAR NO. 188290 <br> MICHAEL C EARLE <br> 474 W Orange Show Rd <br> San Bernardino, CA 92408 <br> TELEPHONE NO. (909) 889-5151  FAX NO. *(Optional)*: (909) 889-3900 <br> E-MAIL ADDRESS *(Optional)* <br> ATTORNEY FOR *(Name)*: PLAINTIFF | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
>  STREET ADDRESS 700 CIVIC CENTER DR, WEST
>  MAILING ADDRESS 700 CIVIC CENTER DR, WEST
>  CITY AND ZIP CODE SANTA ANA 92701
>  BRANCH NAME: CENTRAL JUSTICE CENTER

| PLAINTIFF: JAMES SUNGCHULL KIM TRUSTEE(S) OF THE JAMES SUNGCHULL KIM TRUST <br><br> DEFENDANT: JENNIFER PLUMMER , SUZANNA PARRA , | **Assigned for All Purposes** <br><br> **Commissioner Robert Kohler** |
|---|---|

| **COMPLAINT — UNLAWFUL DETAINER\*** | CASE NUMBER |
|---|---|
| ☒ **COMPLAINT**  ☐ **AMENDED COMPLAINT** *(Amendment Number):* | |
| **Jurisdiction** *(check all that apply):* <br> ☒ **ACTION IS A LIMITED CIVIL CASE** <br>  Amount demanded ☒ **does not exceed $10,000** <br>   ☐ **exceeds $10,000 but does not exceed $25,000** <br> ☐ **ACTION IS AN UNLIMITED CIVIL CASE** (amount demanded exceeds $25,000) <br> ☐ **ACTION IS RECLASSIFIED by this amended complaint or cross-complaint** *(check all that apply):* <br>  ☐ from unlawful detainer to general unlimited civil (possession not in issue)  ☐ from limited to unlimited <br>  ☐ from unlawful detainer to general limited civil (possession not in issue)  ☐ from unlimited to limited | 30-2023-01308817-CL-UD-CJC |

1. PLAINTIFF: JAMES SUNGCHULL KIM TRUSTEE(S) OF THE JAMES SUNGCHULL KIM TRUST

alleges causes of action against DEFENDANT *(name each):* JENNIFER PLUMMER , SUZANNA PARRA,

2 a. Plaintiff is (1) ☐ an individual over the age of 18 years (4) ☐ a partnership.

  (2) ☐ a public agency (5) ☐ a corporation.
  (3) ☒ other *(specify):* Trust

  b. ☐ Plaintiff has complied with the fictitious business name laws and is doing business under the fictitious name of *(specify):*

3. a. The venue is the court named above because defendant named above is in possession of the premises located at (street address, apt. no., city, zip code, and county):18982 NORTHERN DANCER LN, YORBA LINDA , CA 92886, ORANGE COUNTY

  b. The premises in 3a are *(check one)*
  (1) ☒ within the city limits of *(name of city):* YORBA LINDA
  (2) ☐ within the unincorporated area of *(name of county):*

  c. The premises in 3a were constructed in *(approximate year):* 2004

4. Plaintiffs interest in the premises is ☒ as owner ☐ other *(specify):*

5. The true names and capacities of defendants sued as Does are unknown to plaintiff.

\* NOTE: Do not use this form for evictions after sale (Code Civ. Proc., § 1161 a). 

| Form Approved for Optional Use <br> Judicial Council of California <br> UD-100 (Rev. September 1, 2020) <br> 23-01-0198 | **COMPLAINT—UNLAWFUL DETAINER** | Civil Code, § 1940 et seq. <br> Code of Civil Procedure §§ 425.12, 1166 <br> www.courtinfo.ca.gov |
|---|---|---|

| PLAINTIFF *(Name):* JAMES SUNGCHULL KIM | CASE NUMBER: |
|---|---|
| DEFENDANT*(Name):* JENNIFER PLUMMER ET AL | 30-2023-01308817-CL-UD-CJC |

6. a. On or about *(date):* 12/15/2022

    defendant *(name each):* JENNIFER PLUMMER , SUZANNA PARRA,

      (1) agreed to rent the premises as a ☐ month-to-month tenancy ☒ other tenancy *(specify):* Lease

      (2) agreed to pay rent of $ 4,300.00     payable ☒ monthly ☐ other *(specify frequency):*

      (3) agreed to pay rent on the ☒ first of the month ☐ other day *(specify):*

  b   This ☒ written ☐ oral agreement was made with

      (1) ☒ plaintiff.          (3) ☐ plaintiffs predecessor in interest.

      (2) ☐ plaintiffs agent      (4) ☐ other *(specify):*

6. c. ☒ The defendants not named in item 6a are

      (1) ☐ subtenants.

      (2) ☐ assignees.

      (3) ☒ other *(specify):* Unknown Occupants

  d. ☐ The agreement was later changed as follows *(specify):*

  e. ☒ A copy of the written agreement, including any addenda or attachments that form the basis of this complaint, is attached and labeled Exhibit 1. *(Required for residential property, unless item 6f is checked. See Code Civ. Proc., § 1166.)*

  f. ☐ *(For residential property)* A copy of the written agreement is not attached because *(specify reason):*

      (1) ☐ the written agreement is not in the possession of the landlord or the landlord's employees or agents.

      (2) ☐ this action is solely for nonpayment of rent (Code Civ. Proc., § 1161(2)).

7. The tenancy described in 6 (complete (a) or (b))

  a. ☒ is not subject to the Tenant Protection Act of 2019 (Civil Code, § 1946.2). The specific subpart supporting why tenancy is exempt is *(specify):* This property meets the requirements of Sections 1947.12 (d)(5) and 1946.2 (e)(8) of the Civil Code

  b. ☐ is subject to the Tenant Protection Act of 2019.

8. *(Complete only if item 7b is checked. Check all applicable boxes.)*

  a. ☐ The tenancy was terminated for at-fault just cause (Civil Code, § 1946.2(b)(1)).

  b. ☐ The tenancy was terminated for no-fault just cause (Civil Code, § 1946.2(b)(2)) and the plaintiff *(check one)*

      (1) ☐ waived the payment of rent for the final month of the tenancy, before the rent came due, under section 1946.2(d)(2), in the amount of $

      (2) ☐ provided a direct payment of one month's rent under section 1946.2(d)(3), equaling $ to *(name each defendant and amount given to each):*

  c. ☐ Because defendant failed to vacate, plaintiff is seeking to recover the total amount in 8b as damages in this action

9 ☒ a. Defendant *(name each):* JENNIFER PLUMMER , SUZANNA PARRA,

  was served the following notice on the same date and in the same manner:

  (1) ☐ 3-day notice to pay rent or quit      (5) ☐ 3-day notice to perform covenants or quit *(not applicable if item 7b checked)*

  (2) ☐ 30-day notice to quit           (6) ☒ 3-day notice to quit

  (3) ☐ 60-day notice to quit                    Prior required notice to perform covenants served *(date):* 02/02/2023

  (4) ☐ 3-day notice to quit             (7) ☐ Other *(specify):*

**COMPLAINT—UNLAWFUL DETAINER**
23-01-0198

| PLAINTIFF *(Name)*: JAMES SUNGCHULL KIM | CASE NUMBER: |
|---|---|
| DEFENDANT*(Name)*: JENNIFER PLUMMER ET AL | |

9. b. (1) On *(date)*: 02/14/2023      the period stated in the notice expired at the end of the day.

    (2) Defendants failed to comply with the requirements of the notice by that date.

  c. All facts stated in the notice are true.

  d. ☒ The notice included an election of forfeiture.

  e. ☒ A copy of the notice is attached and labeled Exhibit 2. *(Required for residential property. See Code Civ. Proc., § 1166.)*

  f. ☐ One or more defendants were served (1) with a different notice, (2) on a different date, or (3) in a different manner, as stated in Attachment 8c. *(Check item 8c and attach a statement providing the information required by items 7a-e and 8 for each defendant.)*

10. a. ☒ The notice in item 9a was served on the defendant named in item 9a as follows:

    (1) ☐ by personally handing a copy to defendant on *(date)*:

    (2) ☐ by leaving a copy with *(name or description)*:
        a person of suitable age and discretion, on *(date)*:      at defendant's
        ☐ residence    ☐ business AND mailing a copy to defendant at defendant's place of residence on *(date)*:      because defendant cannot be found at defendant's residence or usual place of business.

    (3) ☒ by posting a copy on the premises on *(date)*: 02/10/2023    ☐ AND giving a copy to a person found residing at the premises AND mailing a copy to defendant at the premises on *(date)*: 02/10/2023

        (a) ☐ because defendant's residence and usual place of business cannot be ascertained OR

        (b) ☒ because no person of suitable age or discretion can be found there.

    (4) ☐ *(Not for 3-day notice; see Civil Code, § 1946 before using)* by sending a copy by certified or registered mail addressed to defendant on *(date)*:

    (5) ☐ *(Not for residential tenancies; see Civil Code, § 1953 before using)* in the manner specified in a written commercial lease between the parties.

  b. ☐ *(Name)*:
    was served on behalf of all defendants who signed a joint written rental agreement.

  c. ☐ Information about service of notice on the defendants alleged in item 7f is stated in Attachment 8c.

  d. ☒ Proof of service of the notice in item 9a is attached and labeled Exhibit 3.

11. ☐ Plaintiff demands possession from each defendant because of expiration of a fixed-term lease.

12. ☐ At the time the 15-day notice to pay rent or quit was served, the amount of rent due was $ 0.00

13. ☒ The fair rental value of the premises is $ 143.33 per day.

14. ☐ Defendant's continued possession is malicious, and plaintiff is entitled to statutory damages under Code of Civil Procedure section 1174(b). *(State specific facts supporting a claim up to $600 in Attachment 12.)*

15. ☒ A written agreement between the parties provides for attorney fees.

16. ☐ Defendant's tenancy is subject to the local rent control or eviction control ordinance of *(city or county, title of ordinance, and date of passage)*:


    Plaintiff has met all applicable requirements of the ordinances.

17. ☐ Other allegations are stated in Attachment 15.

18. Plaintiff accepts the jurisdictional limit, if any, of the court.

| PLAINTIFF *(Name):* JAMES SUNGCHULL KIM | CASE NUMBER: |
|---|---|
| DEFENDANT*(Name):* JENNIFER PLUMMER ET AL | |

**19. PLAINTIFF REQUESTS**

a. possession of the premises.

b. costs incurred in this proceeding:

c. ☐ past-due rent of $ 0.00

d. ☒ reasonable attorney fees.

e. ☒ forfeiture of the agreement

f. ☐ damages in the amount of waived rent or relocation assistance as stated in item 8: $

g. ☒ damages at the rate stated in item 13 from

*date:)* 02/15/2023

for each day that defendants remain in possession through entry of judgment.

h. ☐ statutory damages up to $600 for the conduct alleged in item 12.

i. ☐ other *(specify):*

20. ☒ Number of pages attached *(specify):* 19

## UNLAWFUL DETAINER ASSISTANT (Bus. & Prof. Code, §§ 6400-6415)

21. *(Complete in all cases.)* An unlawful detainer assistant ☒ did not ☐ did    for compensation give advice or assistance with this form. *(If plaintiff has received any help or advice for pay from an unlawful detainer assistant, state:)*

a. Assistant's Name:

b. Street address, city, and zip code:

c. Telephone No.:

d. County of registration:

e. Registration No.:

f. Expires on *(date):*

Date: 2/20/2023

M. C. EARLE
_____
**(TYPE OR PRINT NAME)**

▶ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

## VERIFICATION

*(Use a different verification form if the verification is by an attorney or for a corporation or partnership.)*

I am the plaintiff in this proceeding and have read this complaint. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
**(TYPE OR PRINT NAME)**

▶ _____
(SIGNATURE OF PLAINTIFF)

**COMPLAINT—UNLAWFUL DETAINER**
23-01-0198

CP10.5

**NOTICE:** EVERYONE WHO LIVES IN THIS RENTAL UNIT MAY BE EVICTED BY COURT ORDER. READ THIS FORM IF YOU LIVE HERE AND IF YOUR NAME IS NOT ON THE ATTACHED SUMMONS AND COMPLAINT.

1. If you live here and you do not complete and submit this form, you may be evicted without further hearing by the court along with the persons named in the Summons and Complaint.

2. You must file this form within 10 days of the date of service listed in the box on the right hand side of this form.
   - **Exception:** If you are a tenant being evicted after your landlord lost the property to foreclosure, the 10-day deadline does not apply to you and you may file this form at any time before judgment is entered.

3. If you file this form, your claim will be determined in the eviction action against the persons named in the complaint.

4. If you do not file this form, you may be evicted without further hearing.

5. If you are a tenant being evicted due to foreclosure, you have additional rights and should seek legal advice immediately.

| | |
|---|---|
| CLAIMANT OR CLAIMANT'S ATTORNEY *(Name and Address):*   TELEPHONE NO.:<br><br><br>ATTORNEY FOR *(Name):* | *FOR COURT USE ONLY* |
| NAME OF COURT: CENTRAL JUSTICE CENTER<br>STREET ADDRESS: 700 CIVIC CENTER DR, WEST<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: SANTA ANA, CA 92701<br>BRANCH NAME: CENTRAL JUSTICE CENTER | |
| Plaintiff: JAMES SUNGCHULL KIM  TRUSTEE(S) OF THE JAMES SUNGCHULL KIM TRUST<br><br>Defendant: JENNIFER PLUMMER , SUZANNA PARRA ET AL. | |
| **PREJUDGMENT CLAIM OF RIGHT TO POSSESSION** | CASE NUMBER: |
| Complete this form only if ALL of these statements are true:<br>1. You are NOT named in the accompanying Summons and Complaint.<br>2. You occupied the subject premises on or before the date the unlawful detainer (eviction) complaint was filed. (The date is in the accompanying Summons and Complaint.)<br>3. You still occupy the subject premises. | *(To be completed by the process server)*<br>DATE OF SERVICE:<br>*(Date that form is served or delivered, posted, and mailed by the officer or process server)* |

I DECLARE THE FOLLOWING UNDER PENALTY OF PERJURY:

1. My name is *(specify):*

2. I reside at *(street address, unit no., city and ZIP code):*

3. The address of "the premises" subject to this claim is *(address):*
   18982 NORTHERN DANCER LN, YORBA LINDA , CA 92886, ORANGE COUNTY

4. On *(insert date):*                          , the landlord or the landlord's authorized agent filed a complaint to recover possession of the premises.   *(This date is in the accompanying Summons and Complaint.)*

5. I occupied the premises on the date the complaint was filed *(the date in item 4).* I have continued to occupy the premises ever since.

6. I was at least 18 years of age on the date the complaint was filed *(the date in item 4).*

7. I claim a right to possession of the premises because I occupied the premises on the date the complaint was filed *(the date in item 4).*

8. I was not named in the Summons and Complaint.

9. I understand that if I make this claim of possession, I will be added as a defendant to the unlawful detainer (eviction) action.

10. *(Filing fee)* I understand that I must go to the court and pay a filing fee of   $                   or file with the court an "Application for Waiver of Court Fees and Costs." I understand that if I don't pay the filing fee or file the form for waiver of court fees, I will not be entitled to make a claim of right to possession.

*(Continued on reverse)*

**PREJUDGMENT CLAIM OF RIGHT TO POSSESSION**   Code of Civil Procedure, §§ 415.46<br>715.010, 715.020, 1174.25

Plaintiff:    JAMES SUNGCHULL KIM

Defendant: JENNIFER PLUMMER ET AL

CASE NUMBER:

11. If my landlord lost this property to foreclosure, I understand that I can file this form at any time before judgment is entered, and that I have additional rights and should seek legal advice.

12. I understand that I will have *five days* (excluding court holidays) to file a response to the Summons and Complaint after I file this Prejudgment Claim of Right to Possession form.

> **NOTICE:** If you fail to file this claim, you may be evicted without further hearing.

13  Rental agreement. I have *(check all that apply to you)*:

    a.  ☐   an oral or written rental agreement with the landlord.

    b.  ☐   an oral or written rental agreement with a person other than the landlord.

    c.  ☐   an oral or written rental agreement with the former owner who lost the property to foreclosure.

    d.  ☐   *other (explain):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

> **WARNING:** Perjury is a felony punishable by imprisonment in the state prison.

Date:

▶

_____          _____
(TYPE OR PRINT NAME)                                               (SIGNATURE OF CLAIMANT)

> **NOTICE:**   If you file this claim to possession, the unlawful detainer action against you will be determined at trial. At trial, you may be found liable for rent, costs, and, in some cases, treble damages.

---

## — NOTICE TO OCCUPANTS —

**YOU MUST ACT AT ONCE** if all the following are true:

    1. You are NOT named in the accompanying Summons and Complaint.

    2. You occupied the premises on or before the date the unlawful detainer (eviction) complaint was filed.

    3. You still occupy the premises.

You can complete and SUBMIT THIS CLAIM FORM WITHIN 10 DAYS from the date of service (on the form) at the court where the unlawful detainer (eviction) complaint was filed. If you are a tenant and your landlord lost the property you occupy through foreclosure, this 10-day deadline does not apply to you. You may file this form at any time before judgment is entered. You should seek legal advice immediately.

If you do not complete and submit this form (and pay a filing fee or file a fee waiver form if you cannot pay the fee), YOU WILL BE EVICTED.

After this form is properly filed, you will be added as a defendant in the unlawful detainer (eviction) action and your right to occupy the premises will be decided by the court. *If you do not file this claim, you may be evicted without a hearing.*



American LegalNet, Inc.
www.FormsWorkFlow.com

## VERIFICATION

**STATE OF CALIFORNIA, COUNTY OF** ORANGE

I have read the foregoing SUMMONS AND COMPLAINT

and know its contents.

## ☐ CHECK APPLICABLE PARAGRAPHS

☐ I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am ☐ an Officer ☐ a partner
☐ a                                          of
a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.
☐ I am informed and believe and on that ground allege that the matters stated in the foregoing documents are true. ☐ The matters stated in the foregoing document are true of my own knowledge except as to those matters which are state on information and belief, and as to those matters I believe them to be true.

☒ I am one of the attorneys for PLAINTIFF
a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on: 02/20/2023, at San Bernardino, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

M. C. EARLE
_____          _____
**TYPE OR PRINT NAME**                              **SIGNATURE**

## PROOF OF SERVICE
1013A (3) CCP Revised 2004

**STATE OF CALIFORNIA, COUNTY OF ORANGE**
I am employed in the county of                                          , State of California

I am over the age of 18 and not a party to the within action; y business address is:

On                                          , I served the foregoing document described as

on                                          in this action

☐ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.
☐ by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

☐ **BY MAIL**
   \*I deposited such envelope in the mail at                                          , California
   The envelope was mailed with postage thereon fully prepaid
   ☐ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at                                          California in the ordinary course of business. I am aware that on motion of the
   Party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit of mailing affidavit.
Executed on                                          , at                                          , California
☐\*\*(BY PERSONAL SERVICE) I delivered such envelop by hand to the offices of the addressee.
Executed on                                          , at                                          , California
☐ (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.
☐ (Federal)  I declare that I am employed in the office of a member of the bar of this court whose direction the service was made.

_____          _____
**TYPE OR PRINT NAME**                              **SIGNATURE**

**\*(BY MAIL SIGNATURE MUST BE OF PERSON DEPOSITING ENVELOPE IN MAIL SLOT, BOX OR BAG)**
**\*\*(FOR PERSONAL SERVICE SIGNATURE MUST BE THAT OF MESSENGER)**

DocuSign Envelope ID: DB5CB7C7-B3E8-4017-AF5C-4A1FF1FFBB42



**RESIDENTIAL LEASE OR**
**MONTH-TO-MONTH RENTAL AGREEMENT**
(C.A.R. Form LR, Revised 12/21)

Date _12/12/2022_ _James Sungchull Kim, Mikyoung Kim_ ("Landlord") and
_Jennifer Plummer, Suzanna Parra_ ("Tenant") agree as follows ("Agreement"):

1. **PROPERTY:**
   A. Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as: _18982 Northern_ _Dancer Ln, Yorba Linda, CA 92886_ ("Premises").
   B. The Premises are for the sole use as a personal residence by the following named person(s) only: _Jennifer Plummer,_ _Suzanna Parra_
   C. The following personal property, maintained pursuant to paragraph 11, is included: _____ _____ or ☐ (if checked) the personal property on the attached addendum is included.
   D. The Premises may be subject to a local rent control ordinance

2. **TERM:** The term begins on (date) _December 15, 2022_ ("Commencement Date"). If Tenant has not paid all amounts then due; (i) Tenant has no right to possession or keys to the premises and; (ii) this Agreement is voidable at the option of Landlord, 2 calendar days after giving Tenant a Notice to Pay (C.A.R. Form PPN). Notice may be delivered to Tenant (I) in person; (II) by mail to Tenant's last known address; or (III) by email, if provided in Tenant's application or previously used by Tenant to communicate with Landlord or agent or Owner. If Landlord elects to void the lease, Landlord shall refund to Tenant all rent and security deposit paid.
   (Check A or B):
   ☐ A. **Month-to-Month:** This Agreement continues from the commencement date as a month-to-month tenancy. Tenant may terminate the tenancy by giving written notice at least 30 days prior to the intended termination date. Tenant shall be responsible for paying rent through the termination date even if moving out early. Landlord may terminate the tenancy by giving written notice as provided by law. Such notices may be given on any date.
   ☒ B. **Lease:** This Agreement shall terminate on (date) _March 31, 2024_ at _5_ ☐ AM/☒ PM. Tenant shall vacate the Premises upon termination of the Agreement, unless: (i) Landlord and Tenant have extended this Agreement in writing or signed a new agreement; (ii) mandated by any rent increase cap or just cause eviction control under any state or local law; or (III) Landlord accepts Rent from Tenant (other than past due Rent), in which case a month-to-month tenancy shall be created which either party may terminate as specified in **paragraph 2A**. Rent shall be at a rate agreed to by Landlord and Tenant, or as allowed by law. All other terms and conditions of this Agreement shall remain in full force and effect.

3. **RENT:** "Rent" shall mean all monetary obligations of Tenant to Landlord under the terms of the Agreement, except security deposit.
   A. Tenant agrees to pay _$4,300.00_ per month for the term of the Agreement.
   B. Rent is payable in advance on the **1st (or** ☐ **) day** of each calendar month, and is delinquent on the next day.
   C. If Commencement Date falls on any day other than the day Rent is payable under **paragraph 3B**, and Tenant has paid one full month's Rent in advance of Commencement Date, Rent for the second calendar month shall be prorated and Tenant shall pay 1/30th of the monthly rent per day for each day remaining in the prorated second month.
   D. **PAYMENT:**
      (1) Rent shall be paid by ☐ personal check, ☐ money order, ☐ cashier's check, made payable to _Mikyoung Kim_ _____, ☒ wire/electronic transfer, or ☐ other _____
      (2) Rent shall be delivered to (name) _____ (whose phone number is) _____ at (address) _____ _____, (or at any other location subsequently specified by Landlord in writing to Tenant) (and ☐ if checked, rent may be paid personally, between the hours of _____ and _____ on the following days _____).
      (3) If any payment is returned for non-sufficient funds ("NSF") or because tenant stops payment, then, after that: (I) Landlord may, in writing, require Tenant to pay Rent in cash for three months and (ii) all future Rent shall be paid by ☐ money order, or ☐ cashier's check.
   E. Rent payments received by Landlord shall be applied to the earliest amount(s) due or past due.

4. **SECURITY DEPOSIT:**
   A. Tenant agrees to pay _$5,000.00_ as a security deposit. Security deposit will be ☐ transferred to and held by the Owner of the Premises, or ☐ held in Owner's Broker's trust account.
   B. All or any portion of the security deposit may be used, as reasonably necessary, to: (i) cure Tenant's default in payment of Rent (which includes Late Charges, NSF fees or other sums due); (ii) repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest, invitee or licensee of Tenant; (III) clean Premises, if necessary, upon termination of the tenancy; and (iv) replace or return personal property or appurtenances. **SECURITY DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT.** If all or any portion of the security deposit is used during the tenancy, Tenant agrees to reinstate the total security deposit within 5 days after written notice is delivered to Tenant. Within 21 days after Tenant vacates the Premises, Landlord shall: (1) furnish Tenant an itemized statement indicating the amount of any security deposit received and the basis for its disposition and supporting documentation as required by California Civil Code § 1950.5(g); and (2) return any remaining portion of the security deposit to Tenant.
   C. Security deposit will not be returned until all Tenants have vacated the Premises and all keys returned. Any security deposit returned by check shall be made out to all Tenants named on this Agreement, or as subsequently modified.
   D. No interest will be paid on security deposit unless required by local law.
   E. If the security deposit is held by Owner, Tenant agrees not to hold Broker responsible for its return. If the security deposit is held in Owner's Broker's trust account, and Broker's authority is terminated before expiration of this Agreement, and security deposit is released to someone other than Tenant, then Broker shall notify Tenant, in writing, where and to whom security deposit has been released. Once Tenant has been provided such notice, Tenant agrees not to hold Broker responsible for the security deposit.

© 2021, California Association of REALTORS®, Inc.
**LR REVISED 12/21 (PAGE 1 OF 8)** Tenant's Initials ____ / ____ Landlord's Initials ____ / ____
**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 1 OF 8)**

EX 1

DocuSign Envelope ID: DB5CB7C7-B3E8-4017-AF5C-4A1FF1FFBB42

Premises: *18982 Northern Dancer Ln, Yorba Linda, CA 92886*      Date: *12/12/2022*

**5. MOVE-IN COSTS RECEIVED/DUE:** Move-in funds shall be paid by ☐ personal check, ☒ money order, ☒ cashier's check, or ☐ wire/ electronic transfer.

| Category | Total Due | Payment Received | Balance Due | Due Date | Payable To |
|---|---|---|---|---|---|
| Rent from *12/15/2022* to *12/31/2022* (date) | *$2,150.00* | | *$2,150.00* | | |
| *Security Deposit | *$5,000.00* | | *$5,000.00* | | |
| Other *Key Deposit* | *$200.00* | | *$200.00* | | |
| Other | | | | | |
| Total | *$7,350.00* | | *$7,350.00* | | |

\* The maximum amount of security deposit, however designated, cannot exceed two months' Rent for an unfurnished premises, or three months' Rent for a furnished premises.

**6. LATE CHARGE; RETURNED CHECKS:**

  **A.** Tenant acknowledges either late payment of Rent or issuance of a returned check may cause Landlord to incur costs and expenses, the exact amounts of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing, enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of Rent due from Tenant is not received by Landlord within 5 (or ☐ _____ ) calendar days after the date due, or if a check is returned, Tenant shall pay to Landlord, respectively, an additional sum of *$100.00* _____ or _____ % of the Rent due as a Late Charge and $25.00 as a NSF fee for the first returned check and $35.00 as a NSF fee for each additional returned check, either or both of which shall be deemed additional Rent.

  **B.** Landlord and Tenant agree that these charges represent a fair and reasonable estimate of the costs Landlord may incur by reason of Tenant's late or NSF payment. Any Late Charge or NSF fee due shall be paid with the current installment of Rent. Landlord's acceptance of any Late Charge or NSF fee shall not constitute a waiver as to any default of Tenant. Landlord's right to collect a Late Charge or NSF fee shall neither be deemed an extension of the date Rent is due under paragraph 3 nor prevent Landlord from exercising any other rights and remedies under this Agreement and as provided by law.

**7. PARKING: (Check A or B)**

  ☒ **A.** Parking is permitted as follows: _____

    The right to parking ☒ is ☐ is not included in the Rent charged pursuant to paragraph 3. If not included in the Rent, the parking rental fee shall be an additional $ _____ per month. Parking space(s) are to be used only for parking properly registered and operable motor vehicles, except for trailers, boats, campers, buses or trucks (other than pick-up trucks). Tenant shall park in assigned space(s) only. Parking space(s) are to be kept clean. Vehicles leaking oil, gas or other motor vehicle fluids shall not be parked on the Premises. Mechanical work, or storage of inoperable vehicles, or storage of any kind is not permitted in parking space(s) or elsewhere on the Premises except as specified in paragraph 8.

  OR ☐ **B.** Parking is not permitted on the real property of which the Premises is a part.

**8. STORAGE: (Check A or B)**

  ☒ **A.** Storage is permitted as follows: _____
    The right to separate storage space ☒ is, ☐ is not, included in the Rent charged pursuant to paragraph 3. If not included in the Rent, storage space fee shall be an additional $ _____ per month. Tenant shall store only personal property Tenant owns, and shall not store property claimed by another or in which another has any right, title or interest. Tenant shall not store any improperly packaged food or perishable goods, flammable materials, explosives, hazardous waste or other inherently dangerous material, or illegal substances.

  OR ☐ **B.** Except for Tenant's personal property, contained entirely within the Premises, storage is not permitted on the Premises.

**9. UTILITIES:** Tenant agrees to pay for all utilities and services, and the following charges: _____ except _____ , which shall be paid for by Landlord. If any utilities are not separately metered, Tenant shall pay Tenant's proportional share, as reasonably determined and directed by Landlord. If utilities are separately metered, Tenant shall place utilities in Tenant's name as of the Commencement Date. Landlord is only responsible for installing and maintaining one usable telephone jack and one telephone line to the Premises. Tenant shall pay any cost for conversion from existing utilities service provider.

  ☐ **A.** **Water Submeters:** Water use on the Premises is measured by a submeter and Tenant will be separately billed for water usage based on the submeter. See attached Water Submeter Addendum (C.A.R. Form WSM) for additional terms.

  ☐ **B.** **Gas Meter:** The Premises does not have a separate gas meter.

  ☐ **C.** **Electric Meter:** The Premises does not have a separate electrical meter.

**10. CONDITION OF PREMISES:** Tenant has examined Premises and, if any, all furniture, furnishings, appliances, landscaping and fixtures, including smoke alarm(s) and carbon monoxide detector(s). **(Check all that apply:)**

  ☐ **A.** Tenant acknowledges these items are clean and in operable condition, with the following exceptions: _____

  ☐ **B.** Tenant's acknowledgment of the condition of these items is contained in an attached statement of condition (C.A.R. Form MIMO).

  ☐ **C.** (I) Landlord will Deliver to Tenant a statement of condition (C.A.R. Form MIMO) ☐ within 3 days after execution of this Agreement; ☐ prior to the Commencement Date; ☐ within 3 days after the Commencement Date. (ii) Tenant shall complete and return the MIMO to Landlord within 3 (or _____ ) days after Delivery. Tenant's failure to return the MIMO within that time shall conclusively be deemed Tenant's Acknowledgement of the condition as stated in the MIMO.

  ☐ **D.** Tenant will provide Landlord a list of items that are damaged or not in operable condition within 3 (or ☒ *7* ) days after Commencement Date. Tenant shall not be required to do so as a contingency of this Agreement but rather as an acknowledgement of the condition of the Premises.

  ☐ **E.** Other: _____

LR REVISED 12/21 (PAGE 2 OF 8)    Tenant's Initials _____ / _____    Landlord's Initials _____ / _____



**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 2 OF 8)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   18982 Northern

DocuSign Envelope ID: DB5CB7C7-B3E6-4017-AF5C-4A1FF1FFBB42

Premises: *18982 Northern Dancer Ln, Yorba Linda, CA  92886*                                     Date: *12/12/2022*

**11. MAINTENANCE USE AND REPORTING:**

   **A.**  Tenant shall properly use, operate and safeguard Premises, including if applicable, any landscaping, furniture, furnishings and appliances, and all mechanical, electrical, gas and plumbing fixtures, carbon monoxide detector(s) and smoke alarms, and keep them and the Premises clean, sanitary and well ventilated. Tenant shall be responsible for checking and maintaining all carbon monoxide detectors and any additional phone lines beyond the one line and jack that Landlord shall provide and maintain. Tenant shall replace any burned out or malfunctioning light bulbs. Tenant shall immediately notify Landlord, in writing, of any problem, malfunction or damage with any item including carbon monoxide detector(s) and smoke alarms on the property. Tenant shall be charged for all repairs or replacements caused by Tenant, pets, guests or licensees of Tenant, excluding ordinary wear and tear. Tenant shall be charged for all damage to Premises as a result of failure to report a problem in a timely manner. Tenant shall be charged for repair of drain blockages or stoppages, unless caused by defective plumbing parts or tree roots invading sewer lines.

   **B.**  ☐ Landlord ☒ Tenant shall water the garden, landscaping, trees and shrubs, except: _____

   **C.**  ☐ Landlord ☒ Tenant shall maintain the garden, landscaping, trees and shrubs, except: _____

   **D.**  ☐ Landlord ☐ Tenant shall maintain _____

   **E.**  Landlord and Tenant agree that State or local water use restrictions shall supersede any obligation of Landlord or Tenant to water or maintain any garden, landscaping, trees or shrubs pursuant to paragraphs 11B, 11C, and 11D.

   **F.**  Tenant's failure to maintain any item for which Tenant is responsible shall give Landlord the right to hire someone to perform such maintenance and charge Tenant to cover the cost of such maintenance.

   **G.**  The following items of personal property are included in the Premises without warranty and Landlord will not maintain, repair or replace them: *Refrigerator, Microwave, Oven*

   **H.**  Tenant understands that if Premises is located in a Common Interest Development, Landlord may not have authority or control over certain parts of the Premises such as roof, electrical, gas or plumbing features inside certain walls, and common areas such as shared parking structure or garage.

   **I.**  Tenant shall not use the premises to plant, grow, cultivate or sell marijuana.

**12. NEIGHBORHOOD CONDITIONS:** Tenant is advised to satisfy himself or herself as to neighborhood or area conditions, including, but not limited to, schools, proximity and adequacy of law enforcement, crime statistics, proximity of registered felons or offenders, fire protection, other governmental services, availability, adequacy and cost of any wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, cemeteries, facilities and condition of common areas, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Tenant.

**13. PETS:** Unless otherwise provided in California Civil Code § 54.2, or other law, no animal or pet shall be kept on or about the Premises without Landlord's prior written consent, ☐ except as agreed to in the attached Pet Addendum (C.A.R. Form PET).

**14. SMOKING:**

   **A.**  (i) Tenant is responsible for all damage caused by smoking including, but not limited to stains, burns, odors and removal of debris; (ii) Tenant acknowledges that in order to remove odor caused by smoking, Landlord may need to replace carpet and drapes and paint the entire premises regardless of when these items were last cleaned, replaced or repainted. Such actions and other necessary steps will impact the return of any security deposit.

   **B.**  The Premises or common areas may be subject to a local non-smoking ordinance.

   **C.**  NO SMOKING of any substance is allowed on the Premises or common areas. If smoking does occur on the Premises or common areas, (i) Tenant is in material breach of this Agreement; (ii) Tenant, guests, and all others may be required to leave the Premises. ☐ Smoking of the following substances only is allowed: _____

**15. RULES/REGULATIONS:**

   **A.**  Tenant agrees to comply with all Landlord rules and regulations that are at any time posted on the Premises or delivered to Tenant. Tenant shall not, and shall ensure that guests, invitees, and licensees of Tenant shall not, disturb, annoy, endanger or interfere with other tenants of the building or neighbors, or use the Premises for any unlawful purposes, under federal, state or local law including, but not limited to, using, manufacturing, selling, storing or transporting illicit drugs or other contraband, or violate any law or ordinance, or commit a waste or nuisance on or about the Premises.

   **B.**  (If applicable, check one)

      ☐  (1)  Landlord shall provide Tenant with a copy of the rules and regulations within _____ days or _____

   OR ☐  (2)  Tenant has been provided with, and acknowledges receipt of, a copy of the rules and regulations.

**16. ☒ (If checked) CONDOMINIUM; PLANNED UNIT DEVELOPMENT:**

   **A.**  The Premises are a unit in a condominium, planned unit development, common interest subdivision or other development governed by a homeowners' association ("HOA"). The name of the HOA is _____ Tenant agrees to comply with all HOA covenants, conditions and restrictions, bylaws, rules and regulations and decisions ("HOA Rules"). Tenant shall reimburse Landlord for any fines or charges imposed by HOA or other authorities. due to any violation by Tenant, or the guests or licensees of Tenant or Landlord shall have the right to deduct such amounts from the security deposit.

   **B.**  If applicable, Tenant is required to pay a fee to the HOA to gain access to certain areas within the development such as but not necessarily including or limited to the front gate, pool, and recreational facilities. If not specified in paragraph 5, Tenant is solely responsible for payment and satisfying any HOA requirements prior to or upon or after the Commencement Date.

   **C.**  (Check one)

      ☐  (1)  Landlord shall provide Tenant with a copy of the HOA Rules within _____ days or _____

   OR ☐  (2)  Tenant has been provided with, and acknowledges receipt of, a copy of the HOA Rules.

**17. ALTERATIONS; REPAIRS:** Unless otherwise specified by law or paragraph 25C, without Landlord's prior written consent, (i) Tenant shall not make any repairs, alterations or improvements in or about the Premises including: painting, wallpapering, adding or changing locks, installing antenna or satellite dish(es), placing signs, displays or exhibits, or using screws, fastening devices, large nails or adhesive materials; (ii) Landlord shall not be responsible for the costs of alterations or repairs made by Tenant; (iii) Tenant shall not deduct from Rent the costs of any repairs, alterations or improvements; and (iv) any deduction made by Tenant shall be considered unpaid Rent.

LR REVISED 12/21 (PAGE 3 OF 8)   Tenant's Initials  *Y*  /  *LP*        Landlord's Initials  *KL*  /  *AL*

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 3 OF 8)**

DocuSign Envelope ID: DB5CB7C7-B3E8-4017-AF5C-4A1FF1FFBB42

Premises: _18982 Northern Dancer Ln, Yorba Linda, CA  92886_    Date: _12/12/2022_

**18. KEYS; LOCKS:**

A. Tenant acknowledges receipt of (or Tenant will receive [X] prior to the Commencement Date, or [ ]                )

| [X] **2** | key(s) to Premises, | [X] **2** | remote control device(s) for garage door/gate opener(s), |
|---|---|---|---|
| [X] **1** | key(s) to mailbox, | [ ] | |
| [X] **1** | key(s) to common area(s). | [ ] | |

B. Tenant acknowledges that locks to the Premises [X] have, [ ] have not, been re-keyed.

C. If Tenant re-keys existing locks or opening devices, Tenant shall immediately deliver copies of all keys to Landlord. Tenant shall pay all costs and charges related to loss of any keys or opening devices. Tenant may not remove locks, even if installed by Tenant.

**19. ENTRY:**

A. Tenant shall make Premises available to Landlord or Landlord's representative for the purpose of entering to make necessary or agreed repairs (including, but not limited to, installing, repairing, testing, and maintaining smoke detectors and carbon monoxide devices, and bracing, anchoring or strapping water heaters, or repairing dilapidation relating to the presence of mold), decorations, alterations, or improvements; or supplying necessary or agreed services; or to show Premises to prospective or actual purchasers, tenants, mortgagees, lenders, appraisers, contractors and others (collectively "Interested Persons"). Tenant agrees that Landlord, Broker and Interested Persons may take photos of the Premises.

B. Landlord and Tenant agree that 24-hour written notice shall be reasonable and sufficient notice, except as follows:
(1) 48-hour written notice is required to conduct an inspection of the Premises prior to the Tenant moving out, unless the Tenant waives the right to such notice.
(2) If Landlord has in writing informed Tenant that the Premises are for sale and that Tenant will be notified orally to show the premises (C.A.R. Form NSE), then, for the next 120 days following the delivery of the NSE, notice may be given orally to show the Premises to actual or prospective purchasers.
(3) No written notice is required if Landlord and Tenant orally agree to an entry for agreed services or repairs if the date and time of entry are within one week of the oral agreement.
(4) No notice is required: (i) to enter in case of an emergency; (ii) if the Tenant is present and consents at the time of entry; or (iii) if the Tenant has abandoned or surrendered the Premises.

C. [ ] (If checked) Tenant authorizes the use of a keysafe/lockbox to allow entry into the Premises and agrees to sign a keysafe/ lockbox addendum (C.A.R. Form KLA).

**20. PHOTOGRAPHS AND INTERNET ADVERTISING:**

A. In order to effectively market the Premises for sale or rental it is often necessary to provide photographs, virtual tours and other media to Interested Persons. Tenant agrees that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Premises ("Images") for static and/or virtual tours of the Premises by Interested Persons for use on Broker's website, the MLS, and other marketing materials and sites. Tenant acknowledges that once Images are placed on the Internet neither Broker nor Landlord has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet.

B. Tenant acknowledges that prospective Interested Persons coming onto the Premises may take photographs, videos or other images of the Premises. Tenant understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Landlord has control over who views such Images nor what use viewers may make of the Images.

**21. SIGNS:** Tenant authorizes Landlord to place FOR SALE/LEASE signs on the Premises.

**22. ASSIGNMENT; SUBLETTING:**

A. Tenant shall not sublet all or any part of Premises, or parking or storage spaces, or assign or transfer this Agreement or any interest in it, without Landlord's prior written consent. Unless such consent is obtained, any assignment, transfer or subletting of Premises or this Agreement or tenancy, by voluntary act of Tenant, operation of law or otherwise, shall, at the option of Landlord, terminate this Agreement. Any proposed assignee, transferee or sublessee shall submit to Landlord an application and credit information for Landlord's approval and, if approved, sign a separate written agreement with Landlord and Tenant. Landlord's consent to any one assignment, transfer or sublease, shall not be construed as consent to any subsequent assignment, transfer or sublease and does not release Tenant of Tenant's obligations under this Agreement.

B. This prohibition also applies [ ] does not apply) to short term, vacation, and transient rentals such as, but not limited to, those arranged through AirBnB, VRBO, HomeAway or other short term rental services.

C. Any violation of this prohibition is a non-curable, material breach of this Agreement.

**23. JOINT AND INDIVIDUAL OBLIGATIONS:** If there is more than one Tenant, each one shall be individually and completely responsible for the performance of all obligations of Tenant under this Agreement, jointly with every other Tenant, and individually, whether or not in possession.

**24. POSSESSION:**

A. (1) Tenant is not in possession of the Premises. If Landlord is unable to deliver possession of Premises on Commencement Date, such Date shall be extended to the date on which possession is made available to Tenant. If Landlord is unable to deliver possession within 5 (or [ ] _____ ) calendar days after agreed Commencement Date, Tenant may terminate this Agreement by giving written notice to Landlord, and shall be refunded all Rent and security deposit paid.

OR (2) Possession is deemed terminated when Tenant has returned all keys to the Premises to Landlord.

B. [ ] Tenant is already in possession of the Premises.

**25. TENANT'S OBLIGATIONS UPON VACATING PREMISES:**

A. Upon termination of this Agreement, Tenant shall: (i) give Landlord all copies of all keys and any opening devices to Premises, including any common areas; (ii) vacate and surrender Premises to Landlord, empty of all persons; and personal property belonging to Tenant (iii) vacate any/all parking and/or storage space; (iv) clean and deliver Premises, as specified in paragraph C below, to Landlord in the same condition as referenced in paragraph 10; (v) remove all debris; (vi) give written notice to Landlord of Tenant's forwarding address; and (vii) _____

_____

B. All alterations/improvements made by or caused to be made by Tenant, with or without Landlord's consent, become the property of Landlord upon termination. Landlord may charge Tenant for restoration of the Premises to the condition it was in prior to any alterations/improvements.

**LR REVISED 12/21 (PAGE 4 OF 8)**    Tenant's Initials ___ / ___    Landlord's Initials ___ / ___

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 4 OF 8)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    18982 Northern

DocuSign Envelope ID: DB5CB7C7-B3E8-4017-AF5C-4A1FF1FFBB42

Premises: *18982 Northern Dancer Ln, Yorba Linda, CA  92886*                                    Date: *12/12/2022*

**C.**    Right to Pre-Move-Out Inspection and Repairs: (i) After giving or receiving notice of termination of a tenancy (C.A.R. Form NTT), or before the expiration of this Agreement, Tenant has the right to request that an inspection of the Premises take place prior to termination (C.A.R. Form NRI). If Tenant requests such an inspection, Tenant shall be given an opportunity to remedy identified deficiencies prior to termination, consistent with the terms of this Agreement. (ii) Any repairs or alterations made to the Premises as a result of this inspection (collectively, "Repairs") shall be made at Tenant's expense. Repairs may be performed by Tenant or through others, who have adequate insurance and licenses and are approved by Landlord. The work shall comply with applicable law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. (iii) Tenant shall: (a) obtain receipts for Repairs performed by others; (b) prepare a written statement indicating the Repairs performed by Tenant and the date of such Repairs; and (c) provide copies of receipts and statements to Landlord prior to termination. Paragraph 25C does not apply when the tenancy is terminated pursuant to California Code of Civil Procedure § 1161(2), (3), or (4).

**26. BREACH OF CONTRACT; EARLY TERMINATION:** In addition to any obligations established by paragraph 25, in the event of termination by Tenant prior to completion of the original term of the Agreement, Tenant shall also be responsible for lost Rent, rental commissions, advertising expenses and painting costs necessary to ready Premises for re-rental. Landlord may withhold any such amounts from Tenant's security deposit.

**27. TEMPORARY RELOCATION:** Subject to local law, Tenant agrees, upon demand of Landlord, to temporarily vacate Premises for a reasonable period, to allow for fumigation (or other methods) to control wood destroying pests or organisms, or other repairs to Premises. Tenant agrees to comply with all instructions and requirements necessary to prepare Premises to accommodate pest control, fumigation or other work, including bagging or storage of food and medicine, and removal of perishables and valuables. Tenant shall only be entitled to a credit of Rent equal to the per diem Rent for the period of time Tenant is required to vacate Premises.

**28. DAMAGE TO PREMISES:** If, by no fault of Tenant, Premises are totally or partially damaged or destroyed by fire, earthquake, accident or other casualty that render Premises totally or partially uninhabitable, either Landlord or Tenant may terminate this Agreement by giving the other written notice. Rent shall be abated as of the date Premises become totally or partially uninhabitable. The abated amount shall be the current monthly Rent prorated on a 30-day period. If the Agreement is not terminated, Landlord shall promptly repair the damage, and Rent shall be reduced based on the extent to which the damage interferes with Tenant's reasonable use of Premises. If damage occurs as a result of an act of Tenant or Tenant's guests, only Landlord shall have the right of termination, and no reduction in Rent shall be made.

**29. INSURANCE:**

**A.**    Tenant's, guest's, invitees or licensee's personal property and vehicles are not insured by Landlord, manager or, if applicable, HOA, against loss or damage due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. Tenant is advised to carry Tenant's own insurance (renter's insurance) to protect Tenant from any such loss or damage.

**B.**    Tenant shall comply with any requirement imposed on Tenant by Landlord's insurer to avoid: (i) an increase in Landlord's insurance premium (or Tenant shall pay for the increase in premium); or (ii) loss of insurance.

**C.**    ☐ Tenant shall obtain liability insurance, in an amount not less than $ _____, naming Landlord and, if applicable, Property Manager as additional insured for injury or damage to, or upon, the Premises during the term of this agreement or any extension. Tenant shall provide Landlord a copy of the insurance policy before commencement of this Agreement, and a rider prior to any renewal.

**30. WATERBEDS/PORTABLE WASHERS:** Tenant shall not use or have waterbeds on the Premises unless: (i) Tenant obtains a valid waterbed insurance policy; (ii) Tenant increases the security deposit in an amount equal to one-half of one month's Rent; and (iii) the bed conforms to the floor load capacity of Premises. Tenant shall not use on the Premises ☐ Portable Dishwasher ☐ Portable Washing Machine.

**31. WAIVER:** The waiver of any breach shall not be construed as a continuing waiver of the same or any subsequent breach.

**32 NOTICE:** Notices may be served at the following address, or at any other location subsequently designated:

| Landlord: *Mikki Kim* | Tenant: *Jennifer Plummer & Suzanna Parra* |
|---|---|
| *1833 Avenida Del Norte, Fullerton CA 92833* | *jenniferplummer84@gmail.com 424-279-8272* |
| *mikkikim3@gmail.com* | *suzyp17@gmail.com 760-879-9404* |
| *562-822-7442* | |

**33. TENANT ESTOPPEL CERTIFICATE:** Tenant shall execute and return a tenant estoppel certificate delivered to Tenant by Landlord or Landlord's agent within 3 days after its receipt (C.A.R. Form TEC). Failure to comply with this requirement shall be deemed Tenant's acknowledgment that the tenant estoppel certificate is true and correct, and may be relied upon by a lender or purchaser.

**34. REPRESENTATION**

**A.**    **TENANT REPRESENTATION; OBLIGATIONS REGARDING OCCUPANTS; CREDIT:** Tenant warrants that all statements in Tenant's rental application are accurate. Landlord requires all occupants 18 years of age or older and all emancipated minors to complete a lease rental application. Tenant acknowledges this requirement and agrees to notify Landlord when any occupant of the Premises reaches the age of 18 or becomes an emancipated minor. Tenant authorizes Landlord and Broker(s) to obtain Tenant's credit during the tenancy in connection with a modification of this Agreement. Before occupancy begins, Landlord may cancel this Agreement upon disapproval of the credit report(s) or upon discovering that information in Tenant's application is false. During the tenancy, Landlord may reject any such modification upon disapproval of the credit report(s) obtained in connection with the modification. A negative credit report reflecting on Tenant's record may be submitted to a credit reporting agency if Tenant fails to fulfill the terms of payment and other obligations under this Agreement.

**B.**    **LANDLORD REPRESENTATIONS:** Landlord warrants that, unless otherwise specified in writing, Landlord is unaware of (i) any recorded Notices of Default affecting the Premise; (ii) any delinquent amounts due under any loan secured by the Premises; and (iii) any bankruptcy proceeding affecting the Premises.

**35. MEDIATION:**

**A.**    Consistent with paragraphs B and C below, Landlord and Tenant agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action.

LR REVISED 12/21 (PAGE 5 OF 8)    Tenant's Initials _____ / _____    Landlord's Initials _____ / _____

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 5 OF 8)**

DocuSign Envelope ID: DB5CB7C7-B3E8-4017-AF5C-4A1FF1FFBB42

**Premises:** *18982 Northern Dancer Ln, Yorba Linda, CA 92886*                          Date: *12/12/2022*

B. The following matters are excluded from mediation: (i) an unlawful detainer action; (ii) the filing or enforcement of a mechanic's lien; and (iii) any matter within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation provision.

C. Landlord and Tenant agree to mediate disputes or claims involving Listing Agent, Leasing Agent or property manager ("Broker"), provided Broker shall have agreed to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to such Broker. Any election by Broker to participate in mediation shall not result in Broker being deemed a party to this Agreement.

36. **ATTORNEY FEES:** In any action or proceeding arising out of this Agreement, the prevailing party between Landlord and Tenant shall be entitled to reasonable attorney fees and costs collectively not to exceed $1,000 (or $_____ ), except as provided in paragraph 35A.

37. **C.A.R. FORM:** C.A.R. Form means the specific form referenced or another comparable form agreed to by the parties.

38. **STATUTORY DISCLOSURES:**

A. [x] **MOLD AND DAMPNESS:** Exposure to mold may have potential health risks. Tenant acknowledges receipt of the attached booklet titled, "Information on Dampness and Mold for Renters in California" before signing this Residential Lease or Month-to-Month Rental Agreement.

B. [ ] **LEAD-BASED PAINT (If checked):** Premises were constructed prior to 1978. In accordance with federal law, Landlord gives and Tenant acknowledges receipt of the disclosures on the attached form (C.A.R. Form LPD) and a federally approved lead pamphlet.

C. **PERIODIC PEST CONTROL (CHECK IF EITHER APPLIES):**
   (1) [ ] Landlord has entered into a contract for periodic pest control treatment of the Premises and shall give Tenant a copy of the notice originally given to Landlord by the pest control company.
   (2) [ ] Premises is a house. Tenant is responsible for periodic pest control treatment.

D. [ ] **METHAMPHETAMINE CONTAMINATION:** Prior to signing this Agreement, Landlord has given Tenant a notice that a health official has issued an order prohibiting occupancy of the property because of methamphetamine contamination. A copy of the notice and order are attached.

E. **BED BUGS:** Landlord has no knowledge of any infestation in the Premises by bed bugs. See attached Bed Bug Disclosure (C.A.R. Form BBD) for further information. Tenant shall report suspected bed bug infestation to Landlord or, if applicable, property manager and cooperate with any inspection for and treatment of bed bugs. Landlord will notify tenants of any units infested by bed bugs.

F. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Landlord nor Brokers, if any, are required to check this website. If Tenant wants further information, Tenant should obtain information directly from this website.)

G. [ ] **RESIDENTIAL ENVIRONMENTAL HAZARDS BOOKLET:** Tenant acknowledges receipt of the residential environmental hazards booklet.

H. [ ] **MILITARY ORDNANCE DISCLOSURE:** (If applicable and known to Landlord) Premises are located within one mile of an area once used for military training, and may contain potentially explosive munitions.

I. **FLOOD HAZARD DISCLOSURE:** Flooding has the potential to cause significant damage to personal property owned by Tenant. See attached Tenant Flood Hazard Disclosure (C.A.R. Form TFHD) for additional information.

J. [ ] **DEATH ON THE PREMISES:** An occupant of the Premises died on the Premises in the last three years.

K. [ ] **OTHER MATERIAL FACTS:** _____

39. **SERVICEMEMBERS CIVIL RELIEF ACT:** Notwithstanding anything to the contrary in paragraphs 2, 4, 26 or elsewhere in this Agreement, the Servicemembers Civil Relief Act applies to this Agreement and any effort to terminate it, as specified in §§ 3951 and 3955 of the Act.

40. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed except in writing. This Agreement is subject to California landlord-tenant law and shall incorporate all changes required by amendment or successors to such law. This Agreement and any supplement, addendum or modification, including any copy, may be signed in two or more counterparts, all of which shall constitute one and the same writing.

41. **AGENCY:**

A. **CONFIRMATION:** The following agency relationship(s) are hereby confirmed for this transaction:
   Landlord's Brokerage Firm              *Keller Williams Realty*                 License Number    01523891
   Is the broker of (check one): [x] the Landlord; or [ ] both the Tenant and Landlord (Dual Agent).
   Landlord's Agent                       *Jully Ikwang Baik*                      License Number    01916657
   Is (check one): [x] the Landlord's Agent. (salesperson or broker associate); or [ ] both the Tenant's and Landlord's Agent (Dual Agent).
   Tenant's Brokerage Firm                *David Gross*                            License Number    02023448
   Is the broker of (check one): [x] the Tenant; or [ ] both the Tenant and Landlord. (Dual Agent).
   Tenant's Agent                         *Jessica Garcia*                         License Number    02111173
   Is (check one): [x] the Tenant's Agent. (salesperson or broker associate); or [ ] both the Tenant's and Landlord's Agent (Dual Agent).

B. **DISCLOSURE:** [ ] (If checked): The term of this Agreement exceeds one year. A disclosure regarding real estate agency relationships (C.A.R. Form AD) has been provided to Landlord and Tenant, who each acknowledge its receipt.

LR REVISED 12/21 (PAGE 6 OF 8)    Tenant's Initials ___/___    Landlord's Initials ___/___

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 6 OF 8)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    18982 Northern

DocuSign Envelope ID: DB5CB7C7-B3E8-4017-AF5C-4A1FF1FFBB42

Premises: *18982 Northern Dancer Ln, Yorba Linda, CA 92886*  Date: *12/12/2022*

**C.  TERMINATION OF AGENCY RELATIONSHIP:**

(1)  Landlord and Tenant acknowledges and agrees that unless Broker is the property manager, or as specified in (2) below, once Landlord and Tenant enter into this Agreement, **(i)** Broker will not represent Owner in any manner regarding the management of the Premises; and **(ii)** Any representation duties that Broker may owe to, and any agency relationship that Broker may have with, either Landlord or Tenant, is terminated.

(2)  Notwithstanding paragraph 41C(1), Broker duties and responsibilities to either Landlord or Tenant will terminate upon the last to occur of the following (choose all that apply): ☐ Tenant occupancy, ☐ Delivering to Tenant keys or other means of entering the Premises, ☐ Tenant walkthrough, ☒ Completion of Move In Inspection (C.A.R. Form MIMO).

**42.** ☐ **TENANT COMPENSATION TO BROKER:** Upon execution of this Agreement, Tenant agrees to pay compensation to Broker as specified in a separate written agreement between Tenant and Broker.

**43.  NOTICE OF RIGHT TO RECEIVE FOREIGN LANGUAGE TRANSLATION OF LEASE/RENTAL AGREEMENTS:** California Civil Code requires a landlord or property manager to provide a tenant with a foreign language translation copy of a lease or rental agreement if the agreement was negotiated primarily in Spanish, Chinese, Korean, Tagalog or Vietnamese. If applicable, every term of the lease/rental needs to be translated except for, among others, names, dollar amounts and dates written as numerals, and words with no generally accepted non-English translation.

**44.  OWNER COMPENSATION TO BROKER:** Upon execution of this Agreement, Owner agrees to pay compensation to Broker as specified in a separate written agreement between Owner and Broker (C.A.R. Form LL or LCA).

**45.  RECEIPT:** If specified in paragraph 5, Landlord or Broker, acknowledges receipt of move-in funds.

**46.  OTHER TERMS AND CONDITIONS;** If checked, the following ATTACHED documents are incorporated in this Agreement:
☐ Keysafe/Lockbox Addendum (C.A.R. Form KLA); ☐ Lead-Based Paint and Lead-Based Paint Hazards Disclosure (C.A.R. Form LPD);
☐ Lease/Rental Mold and Ventilation Addendum (C.A.R. Form LRM); ☐ Landlord in Default Addendum (C.A.R. Form LID);
☒ Bed Bug Disclosure (C.A.R. Form BBD); ☒ Tenant Flood Hazard Disclosure (C.A.R. Form TFHD);
☒ Rent Cap and Just Cause Addendum (C.A.R. Form RCJC)
Other: _____
_____
_____

**47.  REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 50 or 51 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity **(i)** represents that the entity for which that party is acting already exists and **(ii)** shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

> Landlord and Tenant acknowledge and agree Brokers: **(a)** do not guarantee the condition of the Premises; **(b)** cannot verify representations made by others; **(c)** cannot provide legal or tax advice; **(d)** will not provide other advice or information that exceeds the knowledge, education or experience required to obtain a real estate license. Furthermore, if Brokers are not also acting as Landlord in this Agreement, Brokers: **(e)** do not decide what rental rate a Tenant should pay or Landlord should accept; and **(f)** do not decide upon the length or other terms of this Agreement. Landlord and Tenant agree that they will seek legal, tax, insurance and other desired assistance from appropriate professionals.

**48.** ☐ **INTERPRETER/TRANSLATOR:** The terms of this Agreement have been interpreted for Tenant into the following language: _____ . Landlord and Tenant acknowledge receipt of the attached Interpreter/translator agreement (C.A.R. Form ITA).

**49.  The Premises is being managed by Owner, (or, if checked):**
☐ Listing firm in box below  ☐ Leasing firm in box below  ☐ Property Management firm immediately below
Real Estate Broker (Property Manager) _____  DRE Lic # _____
By (Agent) _____  DRE Lic # _____
Address _____  Telephone # _____

**50.  Tenant agrees to rent the Premises on the above terms and conditions.**
☒ One or more Tenants is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (For Tenant Representative) (C.A.R. Form RCSD-T) for additional terms.
Tenant *Jennifer Plummer*   Date 12/13/2022 | 11:39 PM CST
Print Name *Jennifer Plummer*
Address *3840 Barham Blvd*   City *Los Angeles*   State *CA*   Zip *90068*
Telephone *(424)779-8272*   Text _____   E-mail *jenniferplummer84@gmail.com*
Tenant _____   Date 12/13/2022 | 9:41 PM PST
Print Name *Suzanne Parra*
Address _____   City _____   State ___   Zip _____
Telephone *(760)879-9404*   Text _____   E-mail *suzyp17@gmail.com*

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

LR REVISED 12/21 (PAGE 7 OF 8)  Tenant's Initials ___ / ___  Landlord's Initials ___ / ___

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 7 OF 8)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com  18982 Northern

DocuSign Envelope ID: 0B5CB7C7-B3E8-4017-AF5C-4A1FF1FFBB42

Premises: *18982 Northern Dancer Ln, Yorba Linda, CA 92886* _____ Date: *12/12/2022*

☐ **GUARANTEE:** In consideration of the execution of this Agreement by and between Landlord and Tenant and for valuable consideration, receipt of which is hereby acknowledged, the undersigned ("Guarantor") does hereby: (i) guarantee unconditionally to Landlord and Landlord's agents, successors and assigns, the prompt payment of Rent or other sums that become due pursuant to this Agreement, including any and all court costs and attorney fees included in enforcing the Agreement; (ii) consent to any changes, modifications or alterations of any term in this Agreement agreed to by Landlord and Tenant; and (iii) waive any right to require Landlord and/or Landlord's agents to proceed against Tenant for any default occurring under this Agreement before seeking to enforce this Guarantee.

Guarantor (Print Name) _____

Guarantor _____ Date _____

Address _____ City _____ State ____ Zip _____

Telephone _____ Text _____ E-mail _____

51. Landlord (owner or ☐ agent for owner) agrees to rent the Premises on the above terms and conditions.
☐ One or more Landlords is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (For Landlord Representative) (C.A.R. Form RCSD-LL) for additional terms.

Landlord _____ *James Sunchull Kim* _____ Date *12/13/2022 | 9:36 AM PST*

Landlord _____ *Mikoun Kim* _____ Date *12/13/2022 | 9:42 AM PST*

Address 1*833 Avenida Del Norte, Fullerton, CA 92833*

Telephone *(562)822-7442* ____ Text _____ E-mail *mikkikim3@gmail.com*

---

**REAL ESTATE BROKERS:**
A. Real estate brokers who are not also Landlord under this Agreement are not parties to the Agreement between Landlord and Tenant.
B. Agency relationships are confirmed in **paragraph 41**.
C. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (Leasing Firm) and Cooperating Broker agrees to accept: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or lease or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement between Listing Broker and Cooperating Broker.

Tenant's Brokerage Firm *David Gross* _____ DRE Lic. # *02023448* _____ 9:51
By (Agent) _____ *Jessica Garcia* DRE Lic. # *02111173* __ Date *12/13/2022*
Address _____ City _____ State ____ Zip _____
Telephone *(323)683-8377* ____ Text _____ E-mail *soldbyjla@gmail.com*

Landlord's Brokerage Firm *Keller Williams Realty* _____ DRE Lic. # *01523891* _____ 11:4
By (Agent) *Jully (kwang) Baik* _____ *Jully (kwang) Baik* DRE Lic. # *01916657* __ Date *12/13/2022*
Address *675 Placentia Ave ,suit 150* ____ City *Brea* __ State *CA* Zip *92821*
Telephone *(714)351-1088* ____ Text _____ E-mail *jullybaik@gmail.com*

---

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



LR REVISED 12/21 (PAGE 8 OF 8)

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 8 OF 8)**

# NOTICE TO PERFORM COVENANT (CURE) OR QUIT

TO:    JENNIFER PLUMMER , SUZANNA PARRA

18982 NORTHERN DANCER LN, YORBA LINDA , CA  92886
Property Full Address

**NOTICE TO THE ABOVE-NAMED PERSON(S) AND ANY OTHER OCCUPANTS OF THE ABOVE-REFERENCED PREMISES:**

**WITHIN THREE (3) DAYS** from service of this Notice, you are required to either:

1. Perform the following covenant or cure the following breach of your lease/rental agreement:
You are in violation of your lease agreement dated 12/15/2022 14A, "Smoking," which states NO SMOKING of any substance is allowed on the premises or common areas and if smoking does occur on the premises or common areas, tenant is in material breach of this agreement. You are also in violation of paragraph 15A, "Rules/Regulations" which states tenant agrees to comply with all landlord rules and regulations and shall not disturb, annoy, endanger or interfere with other tenants of the building or neighbors, or use the premises for any unlawful purposes and shall not violate any law or ordinance on or about the premises. On 1/18/2023, the San Lorenzo Community Association (HOA) issued a courtesy notice because there is a strong odor of smoke coming from your residence that is causing a nuisance to your surrounding neighbors. There are written complaints to the landlord from your neighbors they are experiencing extreme secondhand smoke and are smelling the unbearable foul odor of smoke. Within 3 days from the service of this notice you must A). stop/cease from smoking in the premises or in the common areas and B). comply with all HOA rules and regulations.  (See attached HOA notice and letter from neighbor).

2. Vacate the Premises and surrender possession.
If you do not perform, cure the breach, or give up possession by the required time, a legal action will be filed seeking not only damages and possession, but also a statutory damage penalty of up to $600.00 (California Code of Civil Procedure §1174). **NOTICE:** Pursuant to California Civil Code §1785.26, you are hereby notified that a negative credit report reflecting on your credit record may be submitted in the future to a credit reporting agency if you fail to fulfill the terms of our rental/credit obligations. Landlord declares a forfeiture of the lease if: **(i)** you do not perform as specified in paragraph 1; or **(ii)** the breach of your rental agreement is not cured and you continue to occupy the Premises.

Landlord (Owner or Agent)    JAMES SUNGCHULL KIM                                Date:    02/02/2023

Address:    1833 AVENIDA DEL NORTE, FULLERTON , CA 92833

Telephone:    562 822 7441          Fax:   N/A                    Email   N/A

Witness(es)      JAMES SUNGCHULL KIM – LANDLORD,

Date(s) of Incident/Occurrence:    01/18/2023- AND CONTINUOUS BREACH

Form Courtesy of Fast Eviction Service

EX2

# SAN LORENZO COMMUNITY ASSOCIATION

January 18, 2023

Mikyoung Kim
1833 Avenida Del Norte
Fullerton, CA 92833

**RE: 18982 Northern Dancer Lane**

### COURTSEY NOTICE

Dear Homeowner,

Living in a planned community offers many advantages but does impose some restrictions. The primary functions of the restrictions are to ensure that your property value remains at the highest possible level and the appearance of the community meets the high standards of the Association. It is also important to keep our community a pleasurable and safe environment for all residents.

It has come to the Board of Directors attention that you may be in violation of the CC&R's and/or Rules and Regulations as follows:

- **Violation: It was noted that there is a strong odor of smoke coming from your residence that is causing a nuisance to your surrounding neighbors.**

If you are, in fact, in violation of the above-mentioned restriction, then your implementation of a corrective course of action will eliminate any further action by the Board of Directors including holding a hearing, imposing a penalty assessment, or taking such other legal actions as may be necessary to insure correction of the alleged violation. Moreover, if you feel this letter was sent in error, please utilize the space below to explain why.

- **Compliance requested: Upon receipt of this notice, please refrain from smoking inside the unit. We recommend an alternate consumption method (marijuana gummy or bake goods) that is odorless, also finding an alternate location to smoke as to not violate ones peaceful right of enjoyment, purchase a carbon filter, and/or purchase an air purifier. Your cooperation is greatly appreciated.**

Please note that if you have a tenant residing at this address, it is your responsibility to forward this information to your tenant, and to ensure that the tenant complies within the specified timeframe.

Sincerely,

Board of Directors
San Lorenzo Community Association

**CC: Resident**

## SAN LORENZO COMMUNITY ASSOCIATION

------------------------------------------------------------

PLEASE FILL OUT THE INFORMATION BELOW AND RETURN THIS ENTIRE LETTER TO
THE ADDRESS LISTED BELOW

I have _____ have not _____ complied with the above request. Homeowner: Please use the
space below for any comments or questions.

_____

_____

_____

_____

_____

Date: _____ Name: _____

Property Address: _____

Phone Number: _____

January 20, 2023

James and Mikki Kim
Property owners of 18982 Northern Dancer Lane, Yorba Linda, CA 92886
Re: Continuing nuisance and noxious secondhand smoke environment

Dear Mr. and Mrs. Kim,

I am writing this letter per your request to provide additional information and documentation on the continuing noxious secondhand smoke odor caused by the tenants at 18982 Northern Dancer Lane, Yorba Linda, CA 92886.

As I have shared with you in our telephone and in person contacts, this daily noxious secondhand smoke continues to infiltrate my condo unit which is directly above that unit and has several points of attached walls, ceiling, attic, pipes, ventilation, garage and other connection points. The odor is consistent with some form of tobacco and marijuana smoke from the tenants below my unit.

Also, I have included for your records a copy of the January 10, 2023 letter I sent to my own landlord covering a summary of the initial nuisance activities that began immediately the week of 12/28/22 when your new lease tenants moved into your condo unit at 18982 Northern Dancer Lane.

Since the new tenant's arrival to present I have been exposed to very strong secondhand smoke odors on a constant basis with the exception of the periods when I have been forced to leave my home. There was a significant <u>increase</u> in the fumes the days immediately following your meeting with the tenants on 1/9/23. Then a slight reduction on 1/14/23. However, I do not know if that slight reduction is due to my continued efforts to leave my home for long periods during the day, my purchase of 3 air purification units and running them 24/7 or if there was some effort on the part of the tenant to modify their smoking activities.

Unfortunately, the smoking within the condo has not ceased because I am still consistently awoken in the night and early morning hours coughing, due to a very strong odor of smoke in my bedroom, bathroom and closet. The vapors are so impactful it triggers the air purifier to automatically turn on high and reflects an air quality sensor reading of <u>poor.</u> The clothing in my closet has also begun to retain this odor due to the repeated secondhand smoke penetrating my condo.

On 1/17/23 a new concern arose. First, I awoke as the sun was rising to the secondhand smoke odor in my bedroom, bathroom and hallway. Then, I heard the tenant's small dog yelping and whimpering. I was immediately alarmed for the dog as there are often coyotes in the area. I went to my dining room window and looked for the dog or any threat. I observed the dog on the steps near the firepit in the backyard of the tenant's unit below. The dog had quieted and was cowering on the steps. Then I heard the door open in the downstairs unit and a man I not seen before appeared near the dog. He approached the dog with his arm extended and in his hand was a black narrow cylinder-shaped device approximately 12-inches long. He pushed the end of this device against the dog's neck area and appeared to shock or taser the dog. The dog

1

immediately began yelping and shrieking in distress. The man lifted the dog while the taser devise was still at the dog's neck and dragged the dog over to the side of the yard next to the gate. This area was still within my view. The man again appeared to taser or shock the dog even though the dog was not doing anything but cowering next to the fence gate. At that point both the man and the dog disappeared from my view.

I was so horrified and fearful for the dog's safety I immediately called the Orange County Sheriff's dispatcher and was directed to OC Animal Control to make a report of suspected animal cruelty. Animal Control indicated there would be a welfare check on the dog and later confirmed there was a response and report taken. Although this incident is separate from the toxic smoke exposure, I wanted you to be aware of this upsetting and disturbing incident on your property.

As I have indicated I continue to be concerned about the immediate and long-term impact to my health from the constant exposure to toxic drifting secondhand smoke in my unit. I continue to experience coughing, headaches, eye irritation and burning in my throat on a daily basis. This impact to my health appears to be a direct result of my exposure to the noxious smoke constantly invading my condo unit. Initially my symptoms would subside when I leave my condo unit. But the continuation of the smoke exposure is now triggering my asthma that had been well-controlled prior to the smoke exposure.  On 1/19/23 the odor was so strong in my bedroom I had to add a second air purifier in my bedroom as a further effort to reduce the hazardous odors.

Consistent with information from my doctor and other health care resources, the only effective way to avoid the harmful effects of secondhand smoke is to eliminate the exposure to the secondhand smoke environment.

I have taken the following mitigations steps throughout this process:

1.  I notified and communicated with owners of both condo units, the HOA and my physician.
2.  I purchased three air purifiers, placed them throughout my unit and have resorted to running them 24/7. This measure has been costly and is significantly increasing my electricity bill. The readings on two of the air purifiers frequently reflect air quality readings between poor to fair as well as registering PM2.5 particulates as the secondhand smoke odor increases.
3.  I have avoided turning on my central air/heating unit even when it has been very cold to prevent circulating the smoke fumes through my entire condo unit.
4.  I have tried to diligently air out my unit by opening windows when the weather has permitted. However, there are times when the smoke is present both inside and outdoors undermining the benefit of opening the windows.
5.  I have stayed away from my home as much as possible since the smoke exposure began. However, staying away from my home for long periods on a daily basis is unsustainable.
6.  Sadly, I have also stopped inviting family and friends over to my house to avoid exposing them to this hazardous environment.

2

This continuing exposure to secondhand smoke from the tenant occupying the unit below me has created and perpetuated a nuisance which is impacting my health as well as interfering with the quiet enjoyment and habitability of my home.

I have done some research during this ordeal and found the following:

- The US Surgeon General has determined there is no safe level of exposure to secondhand smoke. The Centers for Disease Control and Prevention has indicated that secondhand marijuana smoke "*contains many of the same toxic and cancer-causing chemicals found in tobacco and contains some of those chemicals in higher amounts.*" The California Environmental Protection Agency have declared secondhand smoke a "Toxic Air Contaminant."

- The California Air Resource Board, the California Department of Health and Safety, and the Orange County Health Care Agency have each reported similarly that secondhand smoke exposure is harmful and that secondhand smoke exposure as well as smoke drift and seepage can occur in shared spaces, work spaces or Multi-Unit Housing such as condominiums and apartments through light fixtures, pipes, ventilation systems, ceilings crawl spaces, walls, window, doorways as well as a number of other potential entry points.

- The California Air Resource Board has also indicated that air born particles such as PM2.5 can be deposited in the airway and lungs and further it was been determined that "… PM2.5, short-term exposures (up to 24 hours duration) have been associated with premature mortality, increased hospital admissions for heart and lung causes, acute bronchitis, asthma attacks, emergency room visits, respiratory symptoms, and restricted activity days."

- Additionally published studies, including a University of California at Berkeley study, have found that the fine particulate matter exposure from cannabis in the home generates 4 times greater PM 2.5 concentrations than cigarette or tobacco. The particulate levels from combusted marijuana can be breathed into the lungs causing lung irritation, asthma attacks, increased respiratory infections and impairment of blood vessel and cardiovascular functioning. Further, the California Office of Environmental Health Hazard Assessment has included marijuana smoke to its list of carcinogens.

I am a responsible tenant following all the terms of my lease and respectful to the other members of my condo community. Conversely, the new tenant at 18982 Northern Dancer Lane located directly below my unit has breached the no smoking provisions of her lease from inception. This ongoing breach is causing secondhand smoke intrusion into my unit which is negatively impacting my health and the habitability of my home.

It is critical there be a prompt resolution of this matter before the impact on my health worsens and my home becomes uninhabitable. Please let me know if you need any further information.

Sincerely,


Hellen Howe, Tenant at 18984 Northern Dancer Lane, Yorba Linda, CA

3

*I have inserted the content of my 1/10/23 letter updating Tracey Pratt, the owner of my condo unit below.*

January 10, 2023

Re: Continuing toxic smoke environment at condo

I am writing to summarize the persistent and noxious daily strong odor of smoke coming from the new tenants at 18982 Northern Dancer Lane, Yorba Linda, CA. This odor continues to saturate and infiltrate my residence through the walls, pipes, and attached spaces every morning, afternoon, evening and throughout the night. The odor is consistent with some form of marijuana and tobacco smoke.  The stench overwhelms all the inside spaces of my unit including bedrooms, living room, family room, hallways, stairway, closets, entry way and the enclosed garage. It is frequently so strong it awakens me from sleep at night, resulting in a terrible headache, coughing and burning of my eyes and throat.

I began to observed a U-Haul trailer and that someone was moving in at 18982 Northern Dancer Lane during the week of December 28, 2022. I have not met the tenant nor do I know the name of the new tenant, however, I have observed a dog on several occasions at the residence.  As you know that unit is attached and directly below my leased unit. The smoke odor described in the above paragraph began immediately upon the new tenant's arrival and has persisted on a daily basis even after the owner informed the new tenant of the impact of the invasive vapors. However, rather than any reduction or abatement to this toxic odor, it has instead increased.

I am very concerned about the immediate and long-term impact to my health from exposure to this increasingly toxic living environment as well as the potential permanent damage from the fumes to my belonging within my unit. This has created an immediate health impact on me directly as well as to my family members and visitors.

Until the arrival of the new tenant, I have co-existed peaceful with my neighbors and other community members without any conflicts or concerns. I hope there can be an immediate resolution to end this hazardous health situation before my residence becomes completely uninhabitable.

Sincerely,


Hellen Howe
18984 Northern Dancer Lane
Yorba Linda, CA 92886

4

**Photo samples of Air Quality inside 18984 Northern Dancer Lane, YL
Due to Secondhand smoke exposure from 18982 Northern Dancer Lane, YL**

*Note: Red is a poor air quality reading,          is fair and Blue is good.*

*The photos below all reflect poor air quality readings and were taken at the time I
was home and the secondhand smoke exposure was occurring. These photos
capture only a sampling of these readings from 1/14/23 through 1/24/23 and only
one of the many poor air quality readings occurring through any of the days below.
The invasive smoke exposure has and continues to occurs since the new tenants
moved into the 18982 Northern Dancer Lane unit and have continued to happen
constantly since 12/28/22.*



1/24/23     1/23/23     1/22/23     1/21/23

1/19/23     1/17/23     1/14/23

**FINAL**

# THREE-DAY NOTICE TO QUIT FOR BREACH OF COVENANT(S)

TO:   JENNIFER PLUMMER   AND SUZANNA PARRA

*All Residents (tenants and subtenants) in possession (full name) and all others in possession*

of the premises located at:

18982 NORTHERN DANCER LN _____, Unit # (if applicable) _____

*(Street Address)*

YORBA LINDA _____,CA 92886 _____

*(City)*                                                    *(Zip)*

PLEASE TAKE NOTICE that your tenancy of the premises is being terminated pursuant to California Civil Code Section 1946.2. WITHIN THREE (3) COURT DAYS after the service on you of this Notice, you are hereby required to QUIT AND DELIVER UP THE POSSESSION OF THE PREMISES to the undersigned.

You were previously served with a 3 Day Notice To Perform with an opportunity to cure the violation on    02/02/2023

*(Date)*

You did not cure the violation within the time period set forth in the notice. The previous 3 Day Notice To Perform (s) was served due to your failure to perform or otherwise comply with the Rental/Lease Agreement conditions(s) and/or covenants that were being breached as follows:

- ☐ 1.   Failure to pay rent on 15 day notice
- ☒ 2.   Material breach of the rental/lease agreement
- ☐ 3.   Failure to provide access
- ☐ 4.   Other:

A copy of the notice(s) is attached.

If you fail to vacate, Landlord declares the forfeiture of your Rental/Lease Agreement and will institute legal proceedings to obtain possession. Such proceedings could result in a judgment against you, which may include attorneys' fees and court costs as allowed by law, and an additional punitive award of six hundred dollars ($600) in accordance with California law. If you fail to fulfill the terms of your credit obligations, a negative credit report may be submitted to a credit reporting agency.

JAMES SUNGCHULL KIM   ☒ by _____ , _____   Agent for Landlord

**Landlord**                          *Individual Signing for Landlord*          *Management Co. (if Applicable)*

2/10/2023

*Date*

On 02/02/2023, you were served a 3-day notice to perform covenant (cure) or quit because you are in violation of your lease agreement dated 12/15/2022 14A, "Smoking," which states NO SMOKING of any substance is allowed on the premises or common areas and if smoking does occur on the premises or common areas, tenant is in material breach of this agreement. You are also in violation of paragraph 15A, "Rules/Regulations" which states tenant agrees to comply with all landlord rules and regulations and shall not disturb, annoy, endanger or interfere with other tenants of the building or neighbors, or use the premises for any unlawful purposes and shall not violate any law or ordinance on or about the premises. On 1/18/2023, the San Lorenzo Community Association (HOA) issued a courtesy notice because there is a strong odor of smoke coming from your residence that is causing a nuisance to your surrounding neighbors. There are written complaints to the landlord from your neighbors they are experiencing extreme secondhand smoke and are smelling the unbearable foul odor of smoke.

You were given 3 days to A). stop/cease from smoking in the premises or in the common areas and B). comply with all HOA rules and regulations (See attached HOA notice and letter from neighbor), but you failed to comply. You must vacate within 3 days from the service of this notice.

Form Courtesy of FastEvict.com /
Law Group 23-01-0198



EX2

UD-101

# PROOF (DECLARATION) OF SERVICE OF NOTICE TO TENANT

On <u>February 2, 2023,</u> I served the following NOTICE(s):
*(insert Date of Service of Notice)*

☐ 3 Day Notice To Pay Rent of Quit
☒ 3 Day Notice To Perform Covenant or Quit
☐ 30 Day Notice of Termination of Tenancy
☐ 60 Day Notice of Termination of Tenancy
☐Other Notice: _____

The NOTICE(s) set forth above were served on the following Tenant(s) and all other occupants:

<u>JENNIFER PLUMMER , SUZANNA PARRA</u>
**(Insert Tenant(s) Name)**

The NOTICE(s) set forth above were served by:

☐ **PERSONAL DELIVERY**: On the date set forth above, **I HANDED** a copy of the notice to the Tenant(s) named herein at approximately:

☐ **SUBSTITUTE SERVICE**: On the date set forth above, at approximately:
I served the NOTICE to the Tenant(s) named herein by **LEAVING** copies of the NOTICE with:

_____
*(Insert Name of the Person Other Than a Tenant Who is At Least 18 years old or Give Description (Age, Sex, Height, Weight etc. if person refuses to give name)*
who is a person of suitable age and discretion at the residence or usual place of business of the Tenant(s), because the Tenant(s) was/were absent. I also **MAILED** by First Class mail on the same date a copy of the NOTICE to the Tenant(s) named herein by depositing copies in the United States Mail, in a sealed envelope, with postage fully prepaid, addressed to the above named Tenant(s) at the Premises.

☒ **POSTING & MAILING**: On the date set forth above, I served the NOTICE to the Tenant(s) named herein by **POSTING** a copy of the NOTICE in a conspicuous place on the Premises because there was no person of suitable age or discretion found at the Premises at the time I was there, or no one answered the door. On the same day as I posted the NOTICE, I also **MAILED** copies of the NOTICE to the Tenant(s) named herein by depositing a sealed envelope with First Class postage fully prepaid, in the United States Mail, addressed to the Tenant(s) named herein at the Premises address:
18982 NORTHERN DANCER LN, YORBA LINDA , CA 92886

Person who served papers
a. Name: JESUS DIAZ
b. Address: 967 KENDALL DR SUITE A BOX 337, SAN BERNARDINO, CA 92407
c. Telephone Number: 909-889-4200
d. The Fee for Service was: 135.00
e. I am a registered California process server:
  (i) ☐ owner ☒ employee ☐ independent contractor
  (ii) Registration No.:
  (iii) County:

☒ I declare under penalty of perjury under the laws of State of California that the foregoing in true and correct.

Date: 02/20/2023

<u>JESUS DIAZ</u>
**(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHALL)**                    (SIGNATURE)

PROOF OF SERVICE OF NOTICE
23-01-0198

EX3

UD-101

# PROOF (DECLARATION) OF SERVICE OF NOTICE TO TENANT

On <u>February 10, 2023</u>, I served the following NOTICE(s):
(insert Date of Service of Notice)

      ☐ 3 Day Notice To Pay Rent of Quit
      ☐ 3 Day Notice To Perform Covenant or Quit
      ☐ 30 Day Notice of Termination of Tenancy
      ☐ 60 Day Notice of Termination of Tenancy
      ☒ Other Notice:   3 Day Quit

The NOTICE(s) set forth above were served on the following Tenant(s) and all other occupants:

JENNIFER PLUMMER , SUZANNA PARRA
(insert Tenant(s) Name)

The NOTICE(s) set forth above were served by:

☐   PERSONAL DELIVERY: On the date set forth above, I **HANDED** a copy of the notice to the Tenant(s) named herein at approximately:

☐   **SUBSTITUTE SERVICE:** On the date set forth above, at approximately:
I served the NOTICE to the Tenant(s) named herein by **LEAVING** copies of the NOTICE with:

   (Insert Name of the Person Other Than a Tenant Who Is At Least 18 years old or Give Description (Age, Sex, Height, Weight etc. if person refuses to give name)
who is a person of suitable age and discretion at the residence or usual place of business of the Tenant(s), because the Tenant(s) was/were absent. I also **MAILED** by First Class mail on the same date a copy of the NOTICE to the Tenant(s) named herein by depositing copies in the United States Mail, in a sealed envelope, with postage fully prepaid, addressed to the above named Tenant(s) at the Premises.

☒   **POSTING & MAILING:** On the date set forth above, I served the NOTICE to the Tenant(s) named herein by **POSTING** a copy of the NOTICE in a conspicuous place on the Premises because there was no person of suitable age or discretion found at the Premises at the time I was there, or no one answered the door. On the same day as I posted the NOTICE, I also **MAILED** copies of the NOTICE to the Tenant(s) named herein by depositing a sealed envelope with First Class postage fully prepaid, in the United States Mail, addressed to the Tenant(s) named herein at the Premises address:
18982 NORTHERN DANCER LN, YORBA LINDA , CA 92886

Person who served papers
a. Name: JESUS  DIAZ
b. Address: 967 KENDALL DR SUITE A BOX 337, SAN BERNARDINO, CA 92407
c. Telephone Number: 909-889-4200
d. The Fee for Service was: 135.00
e. I am a registered California process server:
     (i) ☐ owner ☒ employee ☐ independent contractor
     (ii) Registration No.:
     (iii) County:

☒ I declare under penalty of perjury under the laws of State of California that the foregoing in true and correct.

Date: 02/20/2023

JESUS  DIAZ
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHALL)         (SIGNATURE)

PROOF OF SERVICE OF NOTICE
23-01-0198

EX3

# EXHIBIT B

DocuSign Envelope ID: DB5CB7C7-B3E8-4017-AF5C-A1FF1FFBB42



**RESIDENTIAL LEASE OR**
**MONTH-TO-MONTH RENTAL AGREEMENT**
(C.A.R. Form LR, Revised 12/21)

Date  _12/12/2022_  _James Sungchull Kim, Mikyoung Kim_  ("Landlord") and
_Jennifer Plummer, Suzanna Parra_  ("Tenant") agree as follows ("Agreement"):

1. **PROPERTY:**
   **A.** Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as: _18982 Northern Dancer Ln, Yorba Linda, CA  92886_  ("Premises").
   **B.** The Premises are for the sole use as a personal residence by the following named person(s) only: _Jennifer Plummer, Suzanna Parra_
   **C.** The following personal property, maintained pursuant to **paragraph 11**, is included: _____ or ☐ (if checked) the personal property on the attached addendum is included.
   **D.** The Premises may be subject to a local rent control ordinance _____

2. **TERM:** The term begins on (date) _December 15, 2022_ ("Commencement Date"). If Tenant has not paid all amounts then due; (i) Tenant has no right to possession or keys to the premises and; (ii) this Agreement is voidable at the option of Landlord, 2 calendar days after giving Tenant a Notice to Pay (C.A.R. Form PPN). Notice may be delivered to Tenant (I) in person; (II) by mail to Tenant's last known address; or (III) by email, if provided in Tenant's application or previously used by Tenant to communicate with Landlord or agent or Owner. If Landlord elects to void the lease, Landlord shall refund to Tenant all rent and security deposit paid.
   **(Check A or B):**
   ☐ **A.** **Month-to-Month:** This Agreement continues from the commencement date as a month-to-month tenancy. Tenant may terminate the tenancy by giving written notice at least 30 days prior to the intended termination date. Tenant shall be responsible for paying rent through the termination date even if moving out early. Landlord may terminate the tenancy by giving written notice as provided by law. Such notices may be given on any date.
   ☒ **B.** **Lease:** This Agreement shall terminate on (date) _March 31, 2024_ at _5_ ☐ AM/☒ PM. Tenant shall vacate the Premises upon termination of the Agreement, unless: (i) Landlord and Tenant have extended this Agreement in writing or signed a new agreement; (II) mandated by any rent increase cap or just cause eviction control under any state or local law; or (III) Landlord accepts Rent from Tenant (other than past due Rent), in which case a month-to-month tenancy shall be created which either party may terminate as specified in **paragraph 2A**. Rent shall be at a rate agreed to by Landlord and Tenant, or as allowed by law. All other terms and conditions of this Agreement shall remain in full force and effect.

3. **RENT:** "Rent" shall mean all monetary obligations of Tenant to Landlord under the terms of the Agreement, except security deposit.
   **A.** Tenant agrees to pay $_4,300.00_ per month for the term of the Agreement.
   **B.** Rent is payable in advance on the **1st (or** ☐ _____ **)** day of each calendar month, and is delinquent on the next day.
   **C.** If Commencement Date falls on any day other than the day Rent is payable under **paragraph 3B**, and Tenant has paid one full month's Rent in advance of Commencement Date, Rent for the second calendar month shall be prorated and Tenant shall pay 1/30th of the monthly rent per day for each day remaining in the prorated second month.
   **D.** **PAYMENT:**
      (1) Rent shall be paid by ☐ personal check, ☐ money order, ☐ cashier's check, made payable to _Mikyoung Kim_ _____ , ☒ wire/electronic transfer, or ☐ other _____
      (2) Rent shall be delivered to (name) _____ (whose phone number is) _____ at (address) _____ , (or at any other location subsequently specified by Landlord in writing to Tenant) (and ☐ if checked, rent may be paid personally, between the hours of _____ and _____ on the following days _____ ).
      (3) If any payment is returned for non-sufficient funds ("NSF") or because tenant stops payment, then, after that: (i) Landlord may, in writing, require Tenant to pay Rent in cash for three months and (ii) all future Rent shall be paid by ☐ money order, or ☐ cashier's check.
   **E.** Rent payments received by Landlord shall be applied to the earliest amount(s) due or past due.

4. **SECURITY DEPOSIT:**
   **A.** Tenant agrees to pay $_5,000.00_ as a security deposit. Security deposit will be ☐ transferred to and held by the Owner of the Premises, or ☐ held in Owner's Broker's trust account.
   **B.** All or any portion of the security deposit may be used, as reasonably necessary, to: (i) cure Tenant's default in payment of Rent (which includes Late Charges, NSF fees or other sums due); (ii) repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest, invitee or licensee of Tenant; (iii) clean Premises, if necessary, upon termination of the tenancy; and (iv) replace or return personal property or appurtenances. **SECURITY DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT.** If all or any portion of the security deposit is used during the tenancy, Tenant agrees to reinstate the total security deposit within 5 days after written notice is delivered to Tenant. Within 21 days after Tenant vacates the Premises, Landlord shall: (1) furnish Tenant an itemized statement indicating the amount of any security deposit received and the basis for its disposition and supporting documentation as required by California Civil Code § 1950.5(g); and (2) return any remaining portion of the security deposit to Tenant.
   **C.** Security deposit will not be returned until all Tenants have vacated the Premises and all keys returned. Any security deposit returned by check shall be made out to all Tenants named on this Agreement, or as subsequently modified.
   **D.** No interest will be paid on security deposit unless required by local law.
   **E.** If the security deposit is held by Owner, Tenant agrees not to hold Broker responsible for its return. If the security deposit is held in Owner's Broker's trust account, and Broker's authority is terminated before expiration of this Agreement, and security deposit is released to someone other than Tenant, then Broker shall notify Tenant, in writing, where and to whom security deposit has been released. Once Tenant has been provided such notice, Tenant agrees to hold Broker responsible for the security deposit.

© 2021, California Association of REALTORS®, Inc.
**LR REVISED 12/21 (PAGE 1 OF 8)**   Tenant's Initials _v_ / _SP_   Landlord's Initials _KL_ / _MK_

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 1 OF 8)**

Keller Williams Realty Brea/Fullerton, 675 Placentia Avenue, Suite 150 Brea CA 92821   Kwang Baik   Fax: (657) 216-0901   18982 Northern   Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

EX 1

DocuSign Envelope ID: DB5CB7C7-B3E8-4017-AF5C-4A1FF1FFBB42

Premises: *18982 Northern Dancer Ln, Yorba Linda, CA 92886*                                         Date: *12/12/2022*

**5.   MOVE-IN COSTS RECEIVED/DUE:** Move-in funds shall be paid by ☐ personal check, ☒ money order, ☒ cashier's check, or ☐ wire/ electronic transfer.

| Category | Total Due | Payment Received | Balance Due | Due Date | Payable To |
|---|---|---|---|---|---|
| Rent from   *12/15/2022* | | | | | |
| to   *12/31/2022*   (date) | $2,150.00 | | $2,150.00 | | |
| *Security Deposit | $5,000.00 | | $5,000.00 | | |
| Other Key Deposit | $200.00 | | $200.00 | | |
| Other | | | | | |
| Total | $7,350.00 | | $7,350.00 | | |

\* The maximum amount of security deposit, however designated, cannot exceed two months' Rent for an unfurnished premises, or three months' Rent for a furnished premises.

**6.   LATE CHARGE; RETURNED CHECKS:**

  **A.**   Tenant acknowledges either late payment of Rent or issuance of a returned check may cause Landlord to incur costs and expenses, the exact amounts of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing, enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of Rent due from Tenant is not received by Landlord within 5 (or ☐_____) calendar days after the date due, or if a check is returned, Tenant shall pay to Landlord, respectively, an additional sum of *$100.00*_____ or_____% of the Rent due as a Late Charge and $25.00 as a NSF fee for the first returned check and $35.00 as a NSF fee for each additional returned check, either or both of which shall be deemed additional Rent,

  **B.**   Landlord and Tenant agree that these charges represent a fair and reasonable estimate of the costs Landlord may incur by reason of Tenant's late or NSF payment. Any Late Charge or NSF fee due shall be paid with the current installment of Rent. Landlord's acceptance of any Late Charge or NSF fee shall not constitute a waiver as to any default of Tenant. Landlord's right to collect a Late Charge or NSF fee shall neither be deemed an extension of the date Rent is due under paragraph 3 nor prevent Landlord from exercising any other rights and remedies under this Agreement and as provided by law.

**7.   PARKING: (Check A or B)**

  ☒   **A.**   Parking is permitted as follows: _____

The right to parking ☒ is ☐ is not included in the Rent charged pursuant to paragraph 3. If not included in the Rent, the parking rental fee shall be an additional $_____ per month. Parking space(s) are to be used only for parking properly registered and operable motor vehicles, except for trailers, boats, campers, buses or trucks (other than pick-up trucks). Tenant shall park in assigned space(s) only. Parking space(s) are to be kept clean. Vehicles leaking oil, gas or other motor vehicle fluids shall not be parked on the Premises. Mechanical work, or storage of inoperable vehicles, or storage of any kind is not permitted in parking space(s) or elsewhere on the Premises except as specified in paragraph 8.

OR ☐   **B.**   Parking is not permitted on the real property of which the Premises is a part.

**8.   STORAGE: (Check A or B)**

  ☒   **A.**   Storage is permitted as follows: _____
The right to separate storage space ☒ is ☐ is not included in the Rent charged pursuant to paragraph 3. If not included in the Rent, storage space fee shall be an additional $_____ per month. Tenant shall store only personal property Tenant owns, and shall not store property claimed by another or in which another has any right, title or interest. Tenant shall not store any improperly packaged food or perishable goods, flammable materials, explosives, hazardous waste or other inherently dangerous material, or illegal substances.

OR ☐   **B.**   Except for Tenant's personal property, contained entirely within the Premises, storage is not permitted on the Premises.

**9.   UTILITIES:** Tenant agrees to pay for all utilities and services, and the following charges: _____ except_____, which shall be paid for by Landlord. If any utilities are not separately metered, Tenant shall pay Tenant's proportional share, as reasonably determined and directed by Landlord. If utilities are separately metered, Tenant shall place utilities in Tenant's name as of the Commencement Date. Landlord is only responsible for installing and maintaining one usable telephone jack and one telephone line to the Premises. Tenant shall pay any cost for conversion from existing utilities service provider.

  ☐   **A.**   **Water Submeters:** Water use on the Premises is measured by a submeter and Tenant will be separately billed for water usage based on the submeter. See attached Water Submeter Addendum (C.A.R. Form WSM) for additional terms.

  ☐   **B.**   **Gas Meter:** The Premises does not have a separate gas meter.

  ☐   **C.**   **Electric Meter:** The Premises does not have a separate electrical meter.

**10.  CONDITION OF PREMISES:** Tenant has examined Premises and, if any, all furniture, furnishings, appliances, landscaping and fixtures, including smoke alarm(s) and carbon monoxide detector(s).

**(Check all that apply:)**

  ☐   **A.**   Tenant acknowledges these items are clean and in operable condition, with the following exceptions: _____

  ☐   **B.**   Tenant's acknowledgment of the condition of these items is contained in an attached statement of condition (C.A.R. Form MIMO).

  ☐   **C.**   (i) Landlord will Deliver to Tenant a statement of condition (C.A.R. Form MIMO) ☐ within 3 days after execution of this Agreement; ☐ prior to the Commencement Date; ☐ within 3 days after the Commencement Date.
         (ii) Tenant shall complete and return the MIMO to Landlord within 3 (or ☐____) days after Delivery. Tenant's failure to return the MIMO within that time shall conclusively be deemed Tenant's Acknowledgement of the condition as stated in the MIMO.

  ☐   **D.**   Tenant will provide Landlord a list of items that are damaged or not in operable condition within 3 (or ☒   7   ) days after Commencement Date, not as a contingency of this Agreement but rather as an acknowledgement of the condition of the Premises.

  ☐   **E.**   Other: _____

LR REVISED 12/21 (PAGE 2 OF 8)   Tenant's Initials ____ / ____   Landlord's Initials ____ / ____
**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 2 OF 8)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   18982 Northern

DocuSign Envelope ID: DB5CB7C7-B3E6-4017-AF5C-4A1FF1FFBB42

Premises: *18982 Northern Dancer Ln, Yorba Linda, CA 92886*                                        Date: *12/12/2022*

**11. MAINTENANCE USE AND REPORTING:**

    **A.** Tenant shall properly use, operate and safeguard Premises, including if applicable, any landscaping, furniture, furnishings and appliances, and all mechanical, electrical, gas and plumbing fixtures, carbon monoxide detector(s) and smoke alarms, and keep them and the Premises clean, sanitary and well ventilated. Tenant shall be responsible for checking and maintaining all carbon monoxide detectors and any additional phone lines beyond the one line and jack that Landlord shall provide and maintain. Tenant shall replace any burned out or malfunctioning light bulbs. Tenant shall immediately notify Landlord, in writing, of any problem, malfunction or damage with any item including carbon monoxide detector(s) and smoke alarms on the property. Tenant shall be charged for all repairs or replacements caused by Tenant, pets, guests or licensees of Tenant, excluding ordinary wear and tear. Tenant shall be charged for all damage to Premises as a result of failure to report a problem in a timely manner. Tenant shall be charged for repair of drain blockages or stoppages, unless caused by defective plumbing parts or tree roots invading sewer lines.

    **B.** ☐ Landlord ☒ Tenant shall water the garden, landscaping, trees and shrubs, except: _____

    **C.** ☐ Landlord ☒ Tenant shall maintain the garden, landscaping, trees and shrubs, except: _____

    **D.** ☐ Landlord ☐ Tenant shall maintain _____

    **E.** Landlord and Tenant agree that State or local water use restrictions shall supersede any obligation of Landlord or Tenant to water or maintain any garden, landscaping, trees or shrubs pursuant to paragraphs 11B, 11C, and 11D.

    **F.** Tenant's failure to maintain any item for which Tenant is responsible shall give Landlord the right to hire someone to perform such maintenance and charge Tenant to cover the cost of such maintenance.

    **G.** The following items of personal property are included in the Premises without warranty and Landlord will not maintain, repair or replace them: *Refrigerator, Microwave, Oven*

    **H.** Tenant understands that if Premises is located in a Common Interest Development, Landlord may not have authority or control over certain parts of the Premises such as roof, electrical, gas or plumbing features inside certain walls, and common areas such as shared parking structure or garage.

    **I.** Tenant shall not use the premises to plant, grow, cultivate or sell marijuana.

**12. NEIGHBORHOOD CONDITIONS:** Tenant is advised to satisfy himself or herself as to neighborhood or area conditions, including, but not limited to, schools, proximity and adequacy of law enforcement, crime statistics, proximity of registered felons or offenders, fire protection, other governmental services, availability, adequacy and cost of any wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, cemeteries, facilities and condition of common areas, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Tenant.

**13. PETS:** Unless otherwise provided in California Civil Code § 54.2, or other law, no animal or pet shall be kept on or about the Premises without Landlord's prior written consent, ☐ except as agreed to in the attached Pet Addendum (C.A.R. Form PET).

**14. SMOKING:**

    **A.** (i) Tenant is responsible for all damage caused by smoking including, but not limited to stains, burns, odors and removal of debris; (ii) Tenant acknowledges that in order to remove odor caused by smoking, Landlord may need to replace carpet and drapes and paint the entire premises regardless of when these items were last cleaned, replaced or repainted. Such actions and other necessary steps will impact the return of any security deposit.

    **B.** The Premises or common areas may be subject to a local non-smoking ordinance.

    **C.** NO SMOKING of any substance is allowed on the Premises or common areas. If smoking does occur on the Premises or common areas, (i) Tenant is in material breach of this Agreement; (ii) Tenant, guests, and all others may be required to leave the Premises. ☐ Smoking of the following substances only is allowed: _____

**15. RULES/REGULATIONS:**

    **A.** Tenant agrees to comply with all Landlord rules and regulations that are at any time posted on the Premises or delivered to Tenant. Tenant shall not, and shall ensure that guests, invitees, and licensees of Tenant shall not, disturb, annoy, endanger or interfere with other tenants of the building or neighbors, or use the Premises for any unlawful purposes, under federal, state or local law including, but not limited to, using, manufacturing, selling, storing or transporting illicit drugs or other contraband, or violate any law or ordinance, or commit a waste or nuisance on or about the Premises.

    **B.** (If applicable, check one)

        ☐ (1) Landlord shall provide Tenant with a copy of the rules and regulations within _____ days or _____

    OR ☐ (2) Tenant has been provided with, and acknowledges receipt of, a copy of the rules and regulations.

**16.** ☒ (If checked) **CONDOMINIUM; PLANNED UNIT DEVELOPMENT:**

    **A.** The Premises are a unit in a condominium, planned unit development, common interest subdivision or other development governed by a homeowners' association ("HOA"). The name of the HOA is _____ Tenant agrees to comply with all HOA covenants, conditions and restrictions, bylaws, rules and regulations and decisions ("HOA Rules"). Tenant shall reimburse Landlord for any fines or charges imposed by HOA or other authorities, due to any violation by Tenant, or the guests or licensees of Tenant or Landlord shall have the right to deduct such amounts from the security deposit.

    **B.** If applicable, Tenant is required to pay a fee to the HOA to gain access to certain areas within the development such as but not necessarily including or limited to the front gate, pool, and recreational facilities. If not specified in paragraph 5, Tenant is solely responsible for payment and satisfying any HOA requirements prior to or upon or after the Commencement Date.

    **C.** (Check one)

        ☐ (1) Landlord shall provide Tenant with a copy of the HOA Rules within _____ days or _____

    OR ☐ (2) Tenant has been provided with, and acknowledges receipt of, a copy of the HOA Rules.

**17. ALTERATIONS; REPAIRS:** Unless otherwise specified by law or paragraph 25C, without Landlord's prior written consent, (i) Tenant shall not make any repairs, alterations or improvements in or about the Premises including: painting, wallpapering, adding or changing locks, installing antenna or satellite dish(es), placing signs, displays or exhibits, or using screws, fastening devices, large nails or adhesive materials; (ii) Landlord shall not be responsible for the costs of alterations or repairs made by Tenant; (iii) Tenant shall not deduct from Rent the costs of any repairs, alterations or improvements; and (iv) any deduction made by Tenant shall be considered unpaid Rent.

**LR REVISED 12/21 (PAGE 3 OF 8)**    Tenant's Initials ____ / ____    Landlord's Initials ____ / ____

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 3 OF 8)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    18982 Northern

DocuSign Envelope ID: DB5CB7C7-B3E8-4017-AF5C-4A1FF1FFBB42

Premises: *18982 Northern Dancer Ln, Yorba Linda, CA 92886*                              Date: *12/12/2022*

**18. KEYS; LOCKS:**

   **A.** Tenant acknowledges receipt of (or Tenant will receive ☒ prior to the Commencement Date, or ☐ _____ )

| ☒ 2 | key(s) to Premises, | ☒ 2 | remote control device(s) for garage door/gate opener(s). |
|---|---|---|---|
| ☒ 1 | key(s) to mailbox, | ☐ | |
| ☒ 1 | key(s) to common area(s). | ☐ | |

   **B.** Tenant acknowledges that locks to the Premises ☒ have, ☐ have not, been re-keyed.

   **C.** If Tenant re-keys existing locks or opening devices, Tenant shall immediately deliver copies of all keys to Landlord. Tenant shall pay all costs and charges related to loss of any keys or opening devices. Tenant may not remove locks, even if installed by Tenant.

**19. ENTRY:**

   **A.** Tenant shall make Premises available to Landlord or Landlord's representative for the purpose of entering to make necessary or agreed repairs (including, but not limited to, installing, repairing, testing, and maintaining smoke detectors and carbon monoxide devices, and bracing, anchoring or strapping water heaters, or repairing dilapidation relating to the presence of mold), decorations, alterations, or improvements; or supplying necessary or agreed services; or to show Premises to prospective or actual purchasers, tenants, mortgagees, lenders, appraisers, contractors and others (collectively "Interested Persons"). Tenant agrees that Landlord, Broker and Interested Persons may take photos of the Premises.

   **B.** Landlord and Tenant agree that 24-hour written notice shall be reasonable and sufficient notice, except as follows:

      **(1)** 48-hour written notice is required to conduct an inspection of the Premises prior to the Tenant moving out, unless the Tenant waives the right to such notice.

      **(2)** If Landlord has in writing informed Tenant that the Premises are for sale and that Tenant will be notified orally to show the premises (C.A.R. Form NSE), then, for the next 120 days following the delivery of the NSE, notice may be given orally to show the Premises to actual or prospective purchasers.

      **(3)** No written notice is required if Landlord and Tenant orally agree to an entry for agreed services or repairs if the date and time of entry are within one week of the oral agreement.

      **(4)** No notice is required: (i) to enter in case of an emergency; (ii) if the Tenant is present and consents at the time of entry; or (iii) if the Tenant has abandoned or surrendered the Premises.

   **C.** ☐ (If checked) Tenant authorizes the use of a keysafe/lockbox to allow entry into the Premises and agrees to sign a keysafe/ lockbox addendum (C.A.R. Form KLA).

**20. PHOTOGRAPHS AND INTERNET ADVERTISING:**

   **A.** In order to effectively market the Premises for sale or rental it is often necessary to provide photographs, virtual tours and other media to Interested Persons. Tenant agrees that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Premises ("Images") for static and/or virtual tours of the Premises by Interested Persons for use on Broker's website, the MLS, and other marketing materials and sites. Tenant acknowledges that once Images are placed on the Internet neither Broker nor Landlord has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet.

   **B.** Tenant acknowledges that prospective Interested Persons coming onto the Premises may take photographs, videos or other images of the Premises. Tenant understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Landlord has control over who views such Images nor what use viewers may make of the Images.

**21. SIGNS:** Tenant authorizes Landlord to place FOR SALE/LEASE signs on the Premises.

**22. ASSIGNMENT; SUBLETTING:**

   **A.** Tenant shall not sublet all or any part of Premises, or parking or storage spaces, or assign or transfer this Agreement or any interest in it, without Landlord's prior written consent. Unless such consent is obtained, any assignment, transfer or subletting of Premises or this Agreement or tenancy, by voluntary act of Tenant, operation of law or otherwise, shall, at the option of Landlord, terminate this Agreement. Any proposed assignee, transferee or sublessee shall submit to Landlord an application and credit information for Landlord's approval and, if approved, sign a separate written agreement with Landlord and Tenant. Landlord's consent to any one assignment, transfer or sublease, shall not be construed as consent to any subsequent assignment, transfer or sublease and does not release Tenant of Tenant's obligations under this Agreement.

   **B.** This prohibition also applies (☐ does not apply) to short term, vacation, and transient rentals such as, but not limited to, those arranged through AirBnB, VRBO, HomeAway or other short term rental services.

   **C.** Any violation of this prohibition is a non-curable, material breach of this Agreement.

**23. JOINT AND INDIVIDUAL OBLIGATIONS:** If there is more than one Tenant, each one shall be individually and completely responsible for the performance of all obligations of Tenant under this Agreement, jointly with every other Tenant, and individually, whether or not in possession.

**24. POSSESSION:**

   **A.** (1) Tenant is not in possession of the Premises. If Landlord is unable to deliver possession of Premises on Commencement Date, such Date shall be extended to the date on which possession is made available to Tenant. If Landlord is unable to deliver possession within 5 (or ☐ _____ ) calendar days after agreed Commencement Date, Tenant may terminate this Agreement by giving written notice to Landlord, and shall be refunded all Rent and security deposit paid.

   OR (2) Possession is deemed terminated when Tenant has returned all keys to the Premises to Landlord.

   **B.** ☐ Tenant is already in possession of the Premises.

**25. TENANT'S OBLIGATIONS UPON VACATING PREMISES:**

   **A.** Upon termination of this Agreement, Tenant shall: (i) give Landlord all copies of all keys and any opening devices to Premises, including any common areas; (ii) vacate and surrender Premises to Landlord, empty of all persons; and personal property belonging to Tenant (iii) vacate any/all parking and/or storage space; (iv) clean and deliver Premises, as specified in paragraph C below, to Landlord in the same condition as referenced in paragraph 10; (v) remove all debris; (vi) give written notice to Landlord of Tenant's forwarding address; and (vii) _____

   **B.** All alterations/improvements made by or caused to be made by Tenant, with or without Landlord's consent, become the property of Landlord upon termination. Landlord may charge Tenant for restoration of the Premises to the condition it was in prior to any alterations/improvements.

LR REVISED 12/21 (PAGE 4 OF 8)    Tenant's Initials ___ / ___    Landlord's Initials ___ / ___

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 4 OF 8)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        18982 Northern

DocuSign Envelope ID: D85CB7C7-B3E8-4017-AF5C-4A1FF1FFBB42

Premises: *18982 Northern Dancer Ln, Yorba Linda, CA  92886*                                       Date: *12/12/2022*

C.  **Right to Pre-Move-Out Inspection and Repairs:** (i) After giving or receiving notice of termination of a tenancy (C.A.R. Form NTT), or before the expiration of this Agreement, Tenant has the right to request that an inspection of the Premises take place prior to termination (C.A.R. Form NRI). If Tenant requests such an inspection, Tenant shall be given an opportunity to remedy identified deficiencies prior to termination, consistent with the terms of this Agreement. (ii) Any repairs or alterations made to the Premises as a result of this inspection (collectively, "Repairs") shall be made at Tenant's expense. Repairs may be performed by Tenant or through others, who have adequate insurance and licenses and are approved by Landlord. The work shall comply with applicable law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. (iii) Tenant shall: (a) obtain receipts for Repairs performed by others; (b) prepare a written statement indicating the Repairs performed by Tenant and the date of such Repairs; and (c) provide copies of receipts and statements to Landlord prior to termination. Paragraph 25C does not apply when the tenancy is terminated pursuant to California Code of Civil Procedure § 1161(2), (3), or (4).

26. **BREACH OF CONTRACT; EARLY TERMINATION:** In addition to any obligations established by paragraph 25, in the event of termination by Tenant prior to completion of the original term of the Agreement, Tenant shall also be responsible for lost Rent, rental commissions, advertising expenses and painting costs necessary to ready Premises for re-rental. Landlord may withhold any such amounts from Tenant's security deposit.

27. **TEMPORARY RELOCATION:** Subject to local law, Tenant agrees, upon demand of Landlord, to temporarily vacate Premises for a reasonable period, to allow for fumigation (or other methods) to control wood destroying pests or organisms, or other repairs to Premises. Tenant agrees to comply with all instructions and requirements necessary to prepare Premises to accommodate pest control, fumigation or other work, including bagging or storage of food and medicine, and removal of perishables and valuables. Tenant shall only be entitled to a credit of Rent equal to the per diem Rent for the period of time Tenant is required to vacate Premises.

28. **DAMAGE TO PREMISES:** If, by no fault of Tenant, Premises are totally or partially damaged or destroyed by fire, earthquake, accident or other casualty that render Premises totally or partially uninhabitable, either Landlord or Tenant may terminate this Agreement by giving the other written notice. Rent shall be abated as of the date Premises become totally or partially uninhabitable. The abated amount shall be the current monthly Rent prorated on a 30-day period. If the Agreement is not terminated, Landlord shall promptly repair the damage, and Rent shall be reduced based on the extent to which the damage interferes with Tenant's reasonable use of Premises. If damage occurs as a result of an act of Tenant or Tenant's guests, only Landlord shall have the right of termination, and no reduction in Rent shall be made.

29. **INSURANCE:**

    A.  Tenant's, guest's, invitees or licensee's personal property and vehicles are not insured by Landlord, manager or, if applicable, HOA, against loss or damage due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. Tenant is advised to carry Tenant's own insurance (renter's insurance) to protect Tenant from any such loss or damage.

    B.  Tenant shall comply with any requirement imposed on Tenant by Landlord's insurer to avoid: (i) an increase in Landlord's insurance premium (or Tenant shall pay for the increase in premium); or (ii) loss of insurance.

    C.  ☐ Tenant shall obtain liability insurance, in an amount not less than $_____, naming Landlord and, if applicable, Property Manager as additional insured for injury or damage to, or upon, the Premises during the term of this agreement or any extension. Tenant shall provide Landlord a copy of the insurance policy before commencement of this Agreement, and a rider prior to any renewal.

30. **WATERBEDS/PORTABLE WASHERS:** Tenant shall not use or have waterbeds on the Premises unless: (i) Tenant obtains a valid waterbed insurance policy; (ii) Tenant increases the security deposit in an amount equal to one-half of one month's Rent; and (iii) the bed conforms to the floor load capacity of Premises. Tenant shall not use on the Premises ☐ Portable Dishwasher ☐ Portable Washing Machine.

31. **WAIVER:** The waiver of any breach shall not be construed as a continuing waiver of the same or any subsequent breach.

32 **NOTICE:** Notices may be served at the following address, or at any other location subsequently designated:

    Landlord: *Mikki Kim*                                          Tenant: *Jennifer Plummer & Suzanna Parra*

    *1833 Avenida Del Norte, Fullerton CA 92833*          *jenniferplummer84@gmail.com 424-279-8272*

    *mikkikim3@gmail.com*                                      *suzyp17@gmail.com 760-879-9404*

    *562-822-7442*

33. **TENANT ESTOPPEL CERTIFICATE:** Tenant shall execute and return a tenant estoppel certificate delivered to Tenant by Landlord or Landlord's agent within **3** days after its receipt (C.A.R. Form TEC). Failure to comply with this requirement shall be deemed Tenant's acknowledgment that the tenant estoppel certificate is true and correct, and may be relied upon by a lender or purchaser.

34. **REPRESENTATION**

    A.  **TENANT REPRESENTATION; OBLIGATIONS REGARDING OCCUPANTS; CREDIT:** Tenant warrants that all statements in Tenant's rental application are accurate. Landlord requires all occupants 18 years of age or older and all emancipated minors to complete a lease rental application. Tenant acknowledges this requirement and agrees to notify Landlord when any occupant of the Premises reaches the age of 18 or becomes an emancipated minor. Tenant authorizes Landlord and Broker(s) to obtain Tenant's credit during the tenancy in connection with a modification of this Agreement. Before occupancy begins, Landlord may cancel this Agreement upon disapproval of the credit report(s) or upon discovering that information in Tenant's application is false. During the tenancy, Landlord may reject any such modification upon disapproval of the credit report(s) obtained in connection with the modification. A negative credit report reflecting on Tenant's record may be submitted to a credit reporting agency if Tenant fails to fulfill the terms of payment and other obligations under this Agreement.

    B.  **LANDLORD REPRESENTATIONS:** Landlord warrants that, unless otherwise specified in writing, Landlord is unaware of (i) any recorded Notices of Default affecting the Premise; (ii) any delinquent amounts due under any loan secured by the Premises; and (iii) any bankruptcy proceeding affecting the Premises.

35. **MEDIATION:**

    A.  Consistent with paragraphs B and C below, Landlord and Tenant agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action.

LR REVISED 12/21 (PAGE 5 OF 8)     Tenant's Initials _*jv*_ / _*SP*_     Landlord's Initials _*KK*_ / _*MK*_

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 5 OF 8)**



Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com     18982 Northern

DocuSign Envelope ID: DB5CB7C7-B3E6-4017-AF5C-4A1FF1FFBB42

Premises: *18982 Northern Dancer Ln, Yorba Linda, CA  92886*                                                   Date: *12/12/2022*

**B.** The following matters are excluded from mediation: (I) an unlawful detainer action; (ii) the filing or enforcement of a mechanic's lien; and (iii) any matter within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation provision.

**C.** Landlord and Tenant agree to mediate disputes or claims involving Listing Agent, Leasing Agent or property manager ("Broker"), provided Broker shall have agreed to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to such Broker. Any election by Broker to participate in mediation shall not result in Broker being deemed a party to this Agreement.

**36. ATTORNEY FEES:** In any action or proceeding arising out of this Agreement, the prevailing party between Landlord and Tenant shall be entitled to reasonable attorney fees and costs collectively not to exceed $1,000 (or $_____ ), except as provided in paragraph 35A.

**37. C.A.R. FORM:** C.A.R. Form means the specific form referenced or another comparable form agreed to by the parties.

**38. STATUTORY DISCLOSURES:**

**A.** ☒ **MOLD AND DAMPNESS:** Exposure to mold may have potential health risks. Tenant acknowledges receipt of the attached booklet titled, "Information on Dampness and Mold for Renters in California" before signing this Residential Lease or Month-to-Month Rental Agreement.

**B.** ☐ **LEAD-BASED PAINT** (If checked): Premises were constructed prior to 1978. In accordance with federal law, Landlord gives and Tenant acknowledges receipt of the disclosures on the attached form (C.A.R. Form LPD) and a federally approved lead pamphlet.

**C.** **PERIODIC PEST CONTROL (CHECK IF EITHER APPLIES):**
  (1) ☐ Landlord has entered into a contract for periodic pest control treatment of the Premises and shall give Tenant a copy of the notice originally given to Landlord by the pest control company.
  (2) ☐ Premises is a house. Tenant is responsible for periodic pest control treatment.

**D.** ☐ **METHAMPHETAMINE CONTAMINATION:** Prior to signing this Agreement, Landlord has given Tenant a notice that a health official has issued an order prohibiting occupancy of the property because of methamphetamine contamination. A copy of the notice and order are attached.

**E.** **BED BUGS:** Landlord has no knowledge of any infestation in the Premises by bed bugs. See attached Bed Bug Disclosure (C.A.R. Form BBD) for further information. Tenant shall report suspected bed bug infestation to Landlord or, if applicable, property manager and cooperate with any inspection for and treatment of bed bugs. Landlord will notify tenants of any units infested by bed bugs.

**F.** **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Landlord nor Brokers, if any, are required to check this website. If Tenant wants further information, Tenant should obtain information directly from this website.)

**G.** ☐ **RESIDENTIAL ENVIRONMENTAL HAZARDS BOOKLET:** Tenant acknowledges receipt of the residential environmental hazards booklet.

**H.** ☐ **MILITARY ORDNANCE DISCLOSURE:** (If applicable and known to Landlord) Premises are located within one mile of an area once used for military training, and may contain potentially explosive munitions.

**I.** **FLOOD HAZARD DISCLOSURE:** Flooding has the potential to cause significant damage to personal property owned by Tenant. See attached Tenant Flood Hazard Disclosure (C.A.R. Form TFHD) for additional information.

**J.** ☐ **DEATH ON THE PREMISES:** An occupant of the Premises died on the Premises in the last three years. _____

**K.** ☐ **OTHER MATERIAL FACTS:** _____

**39. SERVICEMEMBERS CIVIL RELIEF ACT:** Notwithstanding anything to the contrary in paragraphs 2, 4, 26 or elsewhere in this Agreement, the Servicemembers Civil Relief Act applies to this Agreement and any effort to terminate it, as specified in §§ 3951 and 3955 of the Act.

**40. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed except in writing. This Agreement is subject to California landlord-tenant law and shall incorporate all changes required by amendment or successors to such law. This Agreement and any supplement, addendum or modification, including any copy, may be signed in two or more counterparts, all of which shall constitute one and the same writing.

**41. AGENCY:**

**A.** **CONFIRMATION:** The following agency relationship(s) are hereby confirmed for this transaction:
  Landlord's Brokerage Firm _____ *Keller Williams Realty* _____ License Number ___ *01523891*
  Is the broker of (check one): ☒ the Landlord; or ☐ both the Tenant and Landlord (Dual Agent).
  Landlord's Agent _____ *Jully Ikwang Balk* _____ License Number ___ *01916657*
  Is (check one): ☒ the Landlord's Agent. (salesperson or broker associate); or ☐ both the Tenant's and Landlord's Agent (Dual Agent).
  Tenant's Brokerage Firm _____ *David Gross* _____ License Number ___ *02023448*
  Is the broker of (check one): ☒ the Tenant; or ☐ both the Tenant and Landlord (Dual Agent).
  Tenant's Agent _____ *Jessica Garcia* _____ License Number ___ *02111173*
  Is (check one): ☒ the Tenant's Agent. (salesperson or broker associate); or ☐ both the Tenant's and Landlord's Agent (Dual Agent).

**B.** **DISCLOSURE:** ☐ (If checked): The term of this Agreement exceeds one year. A disclosure regarding real estate agency relationships (C.A.R. Form AD) has been provided to Landlord and Tenant, who each acknowledge its receipt.

LR REVISED 12/21 (PAGE 6 OF 8)    Tenant's Initials ___/___    Landlord's Initials ___/___

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 6 OF 8)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    18982 Northern

DocuSign Envelope ID: DB5CB7C7-B3E8-4017-AF5C-4A1FF1FFBB42

Premises: *18982 Northern Dancer Ln, Yorba Linda, CA  92886*                                                      Date: *12/12/2022*

**C.  TERMINATION OF AGENCY RELATIONSHIP:**

(1)  Landlord and Tenant acknowledges and agrees that unless Broker is the property manager, or as specified in (2) below, once Landlord and Tenant enter into this Agreement, **(i)** Broker will not represent Owner in any manner regarding the management of the Premises; and **(ii)** Any representation duties that Broker may owe to, and any agency relationship that Broker may have with, either Landlord or Tenant, is terminated.

(2)  Notwithstanding paragraph 41C(1), Broker duties and responsibilities to either Landlord or Tenant will terminate upon the last to occur of the following (choose all that apply): ☐ Tenant occupancy, ☐ Delivering to Tenant keys or other means of entering the Premises, ☐ Tenant walkthrough, ☒ Completion of Move In Inspection (C.A.R. Form MIMO).

**42.** ☐ **TENANT COMPENSATION TO BROKER:** Upon execution of this Agreement, Tenant agrees to pay compensation to Broker as specified in a separate written agreement between Tenant and Broker.

**43. NOTICE OF RIGHT TO RECEIVE FOREIGN LANGUAGE TRANSLATION OF LEASE/RENTAL AGREEMENTS:** California Civil Code requires a landlord or property manager to provide a tenant with a foreign language translation copy of a lease or rental agreement if the agreement was negotiated primarily in Spanish, Chinese, Korean, Tagalog or Vietnamese. If applicable, every term of the lease/rental needs to be translated except for, among others, names, dollar amounts and dates written as numerals, and words with no generally accepted non-English translation.

**44. OWNER COMPENSATION TO BROKER:** Upon execution of this Agreement, Owner agrees to pay compensation to Broker as specified in a separate written agreement between Owner and Broker (C.A.R. Form LL or LCA).

**45. RECEIPT:** If specified in paragraph 5, Landlord or Broker, acknowledges receipt of move-in funds.

**46. OTHER TERMS AND CONDITIONS;** If checked, the following ATTACHED documents are incorporated in this Agreement:

☐ Keysafe/Lockbox Addendum (C.A.R. Form KLA); ☐ Lead-Based Paint and Lead-Based Paint Hazards Disclosure (C.A.R. Form LPD); ☐ Lease/Rental Mold and Ventilation Addendum (C.A.R. Form LRM); ☐ Landlord in Default Addendum (C.A.R. Form LID); ☒ Bed Bug Disclosure (C.A.R. Form BBD); ☒ Tenant Flood Hazard Disclosure (C.A.R. Form TFHD); ☒ Rent Cap and Just Cause Addendum (C.A.R. Form RCJC)

Other: _____

_____

**47. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in **paragraph 50 or 51** and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity **(i)** represents that the entity for which that party is acting already exists and **(ii)** shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

Landlord and Tenant acknowledge and agree Brokers: **(a)** do not guarantee the condition of the Premises; **(b)** cannot verify representations made by others; **(c)** cannot provide legal or tax advice; **(d)** will not provide other advice or information that exceeds the knowledge, education or experience required to obtain a real estate license. Furthermore, if Brokers are not also acting as Landlord in this Agreement, Brokers: **(e)** do not decide what rental rate a Tenant should pay or Landlord should accept; and **(f)** do not decide upon the length or other terms of this Agreement. Landlord and Tenant agree that they will seek legal, tax, insurance and other desired assistance from appropriate professionals.

**48.** ☐ **INTERPRETER/TRANSLATOR:** The terms of this Agreement have been interpreted for Tenant into the following language: _____ . Landlord and Tenant acknowledge receipt of the attached interpreter/translator agreement (C.A.R. Form ITA).

**49.** The Premises is being managed by Owner, (or, if checked):

☐ Listing firm in box below    ☐ Leasing firm in box below    ☐ Property Management firm immediately below

Real Estate Broker (Property Manager) _____ DRE Lic # _____

By (Agent) _____ DRE Lic # _____

Address _____ Telephone # _____

**50. Tenant agrees to rent the Premises on the above terms and conditions.**

☒ One or more Tenants is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (For Tenant Representative) (C.A.R. Form RCSD-T) for additional terms.

Tenant _____ Date 12/13/2022 | 11:39 PM CST

Print Name *Jennifer Plummer*

Address *3840 Barham Blvd*                    City *Los Angeles*              State *CA*   Zip *90068*

Telephone *(424)379-8272*   Text _____ E-mail *jenniferplummer84@gmail.com*

Tenant _____ Date 12/13/2022 | 9:41 PM PST

Print Name *Susana Parra*

Address _____ City _____ State _____ Zip _____

Telephone *(760)879-9404*   Text _____ E-mail *suzyp17@gmail.com*

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

**LR REVISED 12/21 (PAGE 7 OF 8)**    Tenant's Initials _____ / _____    Landlord's Initials _____ / _____

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 7 OF 8)**

DocuSign Envelope ID: DB5CB7C7-B3E8-4017-AF5C-4A1FF1FFBB42

Premises: *18982 Northern Dancer Ln, Yorba Linda, CA 92886*    Date: *12/12/2022*

☐ **GUARANTEE:** In consideration of the execution of this Agreement by and between Landlord and Tenant and for valuable consideration, receipt of which is hereby acknowledged, the undersigned ("Guarantor") does hereby: **(i)** guarantee unconditionally to Landlord and Landlord's agents, successors and assigns, the prompt payment of Rent or other sums that become due pursuant to this Agreement, including any and all court costs and attorney fees included in enforcing the Agreement; **(ii)** consent to any changes, modifications or alterations of any term in this Agreement agreed to by Landlord and Tenant; and **(iii)** waive any right to require Landlord and/or Landlord's agents to proceed against Tenant for any default occurring under this Agreement before seeking to enforce this Guarantee.

Guarantor (Print Name) _____

Guarantor _____ Date _____

Address _____ City _____ State ____ Zip _____

Telephone _____ Text _____ E-mail _____

51. Landlord (owner or ☐ agent for owner) agrees to rent the Premises on the above terms and conditions.
☐ One or more Landlords is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (For Landlord Representative) (C.A.R. Form RCSD-LL) for additional terms.

Landlord _____ *James Sunchull Kim* Date 12/13/2022 | 9:36 AM PST

Landlord _____ *Mikyoun Kim* Date 12/13/2022 | 9:42 AM PST

Address *1833 Avenida Del Norte, Fullerton, CA 92833*

Telephone *(562)822-7442* Text _____ E-mail *mikkikim3@gmail.com*

---

**REAL ESTATE BROKERS:**
A. Real estate brokers who are not also Landlord under this Agreement are not parties to the Agreement between Landlord and Tenant.
B. Agency relationships are confirmed in paragraph 41.
C. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (Leasing Firm) and Cooperating Broker agrees to accept: **(i)** the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or lease or a reciprocal MLS; or **(ii)** ☐ (If checked) the amount specified in a separate written agreement between Listing Broker and Cooperating Broker.

Tenant's Brokerage Firm *David Gross* DRE Lic. # *02023448*                          9:51

By (Agent) _____ *Jessica Garcia* DRE Lic. # *02111173* Date *12/13/2022*

Address _____ City _____ State ____ Zip _____

Telephone *(323)683-8377* Text _____ E-mail *soldbyjla@gmail.com*

Landlord's Brokerage Firm *Keller Williams Realty* DRE Lic. # *01523891*            11:4

By (Agent) _____ *Jully (kwang) Baik* DRE Lic. # *01916657* Date *12/13/2022*

Address *675 Placentia Ave ,suit 150* City *Brea* State *CA* Zip *92821*

Telephone *(714)351-1088* Text _____ E-mail *jullybaik@gmail.com*

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**LR REVISED 12/21 (PAGE 8 OF 8)**

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 8 OF 8)**